IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

              v.                                15-CR-227-A

RICHARD PETIX,

                Defendant.

_____

## GOVERNMENT'S RESPONSE TO
## DEFENDANT'S OMNIBUS PRETRIAL MOTION

THE UNITED STATES OF AMERICA, by and through its attorneys, William J. Hochul, Jr., United States Attorney for the Western District of New York, Wei Xiang, Assistant United States Attorney, of counsel, hereby files its response to the defendant's omnibus pretrial motion (Dkt. 15).

## Procedural History

On December 4, 2015, the defendant was arrested and charged by criminal complaint for violating Title 18, United States Code, Section 1001(a)(2) (making material false statements) during his encounter on December 3, 2015, with officers of the United States Probation Office for this District and agents of Homeland Security Investigations ("HSI").  See Dkt. 1.  On December 9, 2015, he was indicted for this charge in a one-count indictment.  See Dkt. 3.  On March 9, 2015, the defendant was charged with a superseding indictment that added, in Count Two, a violation of Title 18, United States Code, Section 1960 (operating an unlicensed money transmitting business).  See Dkt. 16.

While the original indictment was pending, the defendant filed, on February 24, 2016, an omnibus pretrial motion seeking nine main forms of relief.  <u>See</u> Dkt. 15.  After the filing of the superseding indictment, the defendant filed, on July 29, 2016, a motion to dismiss Count Two of the superseding indictment.  <u>See</u> Dkt. 23.  The government responded in opposition to the motion to dismiss Count Two, <u>see</u> Dkt. 24, and the Court heard oral argument from the parties on the same on August 24, 2016.  <u>See</u> Dkt. 25.

At such hearing, the defendant announced his intent for his omnibus pretrial motion (Dkt. 15), which was filed against the original indictment, to still be pending for the superseding indictment.  The defendant, however, expressed no intention to refile the omnibus pretrial motion to tailor it, where applicable, to the superseding indictment.  Specifically, he clarified that his motion for a bill of particulars, which listed only Count One, <u>see</u> Dkt. 15-1 ¶ 5, applies only to Count One, and that he is not seeking a bill of particulars for Count Two.  <u>See</u> Dkt. 25.  The government, therefore, responds herein to the defendant's omnibus pretrial motion as it is filed, without regard to Count Two if the motion recites only Count One.

<u>Summary of Relevant Facts</u>

The defendant is on a 30-year term of supervised release in Case Number 06-CR-6007 from the Rochester Division of this District for a conviction of Knowingly Transporting Child Pornography in Interstate Commerce.  He served five years in prison and commenced supervision on June 11, 2012.  Among the special conditions of his supervision as listed in his judgment and sentence (attached as Exhibit 1), the defendant

"must provide the U.S. Probation Office advance notification of any computer(s), automated service(s), or connected device(s) that will be used during the term of supervision" and that "[a]s triggered by impermissible/suspicious activity, [he] shall consent to and cooperate with unannounced examinations of any computer equipment owned or used by [him]."   See Ex. 1, p. 4.   The judgment alerted the defendant that "[t]his examination shall include but is not limited to retrieval and copying of all data from the computer(s), connected device(s), storage media, and any internal or external peripherals, and may involve removal of such equipment for the purpose of conducting a more thorough inspection."   Id.

On October 20, 2015, the defendant completed a "Computer / Internet Data Form" that he submitted to his probation officer.   At the top of the form was the instruction, "As a specific condition of supervision, you are required to provide your probation officer accurate information about your entire computer system and software; all passwords used by you; and your Internet Service Provider(s)."   In response to the typewritten question, "Where do you most often use a computer?", the defendant handwrote, "I dont [sic] use a computer." In response to the typewritten question, "Estimate how many hours a week you are on the Internet?", the defendant handwrote, "N/A."   The defendant signed the form, acknowledging that a false statement on the form may result in a charge of false statements under Title 18, United States Code, Section 1001.

On the night of December 3, 2015, U.S. Probation Officers and HSI investigators covertly gathered around a coffee shop in the City of Buffalo, New York.   Surveillance units

in the parking lot of the coffee shop observed Petix arrive in a vehicle, park, and enter the coffee shop, shortly before 9:30 p.m.   Petix's girlfriend and two minors remained in the vehicle.   Petix sat down at a table in the coffee shop, where he was joined by two individuals, including an undercover HSI agent at approximately 9:37 p.m.[1]   As Petix conversed with his companions, two probation officers in plainclothes approached the table at approximately 9:48 p.m.[2]   On the table at this point were a smartphone and a laptop computer.   The following exchange occurred within the first ten seconds of this encounter:

| | |
|---|---|
| Probation: | You're Richard? |
| Petix: | Yeah. |
| Probation: | Probation.  What are you doing here, man? |
| Petix: | Uh, waiting for my girlfriend. |
| Probation: | What are you doing with - this your computer?  [Pointing to laptop.] |
| Petix: | It's not my computer. |
| Probation: | This is not your computer? |
| Petix: | No. |

The probation officers then secured the electronic devices.   They also directed Petix to leave the coffee shop with them, and enter a vehicle in the parking lot, where they continued to question him about the smartphone and laptop.   He repeatedly denied ownership and use, at times stating that they belonged to his girlfriend.   The probation

---

[1]      Attached as Exhibit 2 is a screenshot of video recording from the undercover agent at approximately the time that the agent sat down at the table.  The timestamp is 9:37:38 p.m. Petix is shown using a laptop computer with a flash drive inserted.

[2]      Attached as Exhibit 3 is a screenshot from the same video, timestamped 9:48:55 p.m., showing Petix reacting to the probation officers' approach.

4

officers then went to the vehicle containing his girlfriend and found five more flash drives in his bag.  His girlfriend told them that the devices belonged to Petix and that he was in the coffee shop for a Bitcoin transaction.  HSI agents also interviewed both Petix and his girlfriend.  One agent even called Petix's telephone number, which caused the smartphone to ring accordingly.  Petix, however, continued to make the same denials as he had to Probation.  Petix was then arrested for violating Title 18, United States Code, Section 1001.

Probation enlisted the assistance of HSI computer forensic agents to attempt to inspect the stored contents of the electronic devices.  On-scene, while the laptop was still powered on, agents were able to inspect the laptop and the attached flash drive through the interface of the laptop.  Later, agents were able to access the contents of the smartphone. Due to the encryption on the flash drives, agents have not been able to access the contents of the other flash drives.  Contrary to the terms of his supervised release, Petix, through his counsel, has declined to provide any decryption keys.

## **Legal Discussion**

**A.    DEFENSE REQUEST FOR ADDITIONAL DISCOVERY SHOULD BE DENIED AS MOOT, OVERBROAD, OR PREMATURE.**

In federal court, "pre-trial discovery in criminal cases is strictly circumscribed." United States v. Nelson, 606 F. Supp. 1378, 1389 (S.D.N.Y. 1985).  "Although Rule 16(a) [of the Federal Rules of Criminal Procedure] provides a mechanism for liberal discovery, it was not intended to provide the defendant with access to the entirety of the government's case against him."  United States v. Percevault, 490 F.2d 126, 130 (2d Cir. 1974).  The government has complied with its obligations in this case by providing substantial voluntary

discovery.  The government, therefore, objects to the defendant's discovery demands to the extent that they are moot or request material beyond the scope of the government's discovery duties.

As part of its voluntary discovery disclosures, the government has provided to defense counsel copies of the following documents and materials, with certain redactions:

1.   Thirteen investigative reports by HSI documenting, among other evidence and circumstances, the undercover operation and arrest on December 3, 2015;

2.   A DVD containing results of the digital forensic analysis of the smartphone charged in Count One;

3.   The Computer / Internet Data Form submitted by the defendant to Probation on October 20, 2015;

4.   A screenshot of the video recording from the undercover agent on December 3, 2015 (the audio/video recording itself was made available for inspection);

5.   47 pages of text messages exchanged between the defendant and either the undercover agent or two former Bitcoin counterparties;

6.   Two photo array identifications of the defendant by two former Bitcoin counterparties;

7.   Various records from Bank of America, Verizon Wireless, LocalBitcoins.com, Coinbase.com, and the Financial Crimes Enforcement Network; and

8.   The search warrant and application under 16-M-67 for a Gmail account, along with a DVD containing the results.

Rule 16 requires the government, at the defendant's request, to produce the defendant's statements and criminal record, as well as certain documents, objects, reports and expert summaries.  Rule 16 does not entitle the defendant to disclosure of every report or other document regarding his arrest, contrary to the defendant's requests at Dkt. 15-1 ¶ 4(i)-(l).  See, e.g., Rule 16(a)(2).  As listed above, the government has already made necessary disclosures through delivery of voluntary discovery material to defense counsel, and will continue to provide any discoverable materials in conformity with Rule 16 and any defense request of merit.

1. Statements

The government has complied with Rule 16(a)(1)(A)-(B) by disclosing to the defense relevant statements made by the defendant, as recited above.  The government appreciates its on-going responsibility to disclose any statements that fall within the ambit of Rule 16(a)(1)(A)-(B) or pursuant to the defendant's constitutional rights and will continue to endeavor to disclose any and all relevant statements.  See Rule 16(c).

The defense requests for statements by co-conspirators (Dkt 15-1 ¶ 4(b)) and statements by the defendant to witnesses (¶ 4(c)), to co-conspirators (¶ 4(d)), and during and after the commission of the alleged crimes (¶ 4(e)) should be denied.  Rule 16 does not provide for discovery of co-conspirator statements.  See United States v. Percevault, 490 F.2d 126, 130-31 (2d Cir. 1974).  For statements by the defendant, they are only discoverable if recorded or documented as provided for in Rule 16(a)(1)(A) and (B).  The defendant's request is overbroad.

2.  Defendant's Prior Record

The defendant's criminal record as the government is currently aware consists of the conviction under 06-CR-6007.

3.  Documents, Objects, Search and Seizure

The government has complied with Rule 16(a)(1)(E) to produce and allow inspection of any documents and objects that the government would anticipate using in its case-in-chief at trial, is material to preparing a defense, or was obtained from the defendant.  The five flash drives recovered by probation officers from the vehicle occupied by the defendant's girlfriend and two minors do not fall within the purview of Rule 16(a)(1)(E).  The five flash drives were not obtained from the defendant, as required by Rule 16(a)(1)(E)(iii).  Nor has the defendant personally asserted that they belong to him.[3]  Since the government does not know what they contain, they have hardly any relevance as evidence in its case-in-chief at trial at this time under Rule 16(a)(1)(E)(ii).

Only the defendant knows whether their contents are material to preparing his defense, as required under Rule 16(a)(1)(E)(i).  But so far as the government is aware, the defendant has only sought to distance himself from the devices in this case.  Why these five flash drives would be material is a mystery on which the government invites the defendant to enlighten the Court.  The government would remind the defendant, however, that the flash drives were recovered by U.S. Probation Officers on behalf of the Court (specifically,

---

[3]     This issue is discussed in greater detail below at Part G, regarding his standing to challenge the admissibility of the physical evidence.

Judge Siragusa).   The terms of his supervised release require him to "permit a probation officer to visit him . . . at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer."  Ex. 1, p.3.  Additionally, "[a]s triggered by impermissible/suspicious activity, [he] shall consent to and cooperate with unannounced examinations of any computer equipment owned or used by [him]."  Id. at p. 4.  Regardless of consent, "[t]he defendant shall submit to a search of his person, property, vehicle, place of residence or any other property under his control, based upon reasonable suspicion, and permit confiscation of any evidence or contraband discovered."  Id.  Until the Court, through Probation, has concluded its inspection of the flash drives, the defendant should not be allowed to receive their contents.  Thus, the defendant's motion at Dkt. 15-1 ¶ 4(g) should be denied as premature and beyond the scope of Rule 16(a)(1)(E).


    4.   <u>Reports of Scientific Examinations and Tests and Expert Disclosure</u>

The defendant moves for disclose of "[a]ll reports of examinations and tests pursuant to Rule 16(a)(1)(D)."  Dkt. 15-1 ¶ 4(h).  As a threshold matter, that cited provision refers to the defendant's criminal record.  Should the defendant have intended to cite to Rule 16(a)(1)(F), the government has already disclosed the discoverable materials pertaining to the electronic devices that can be inspected.  The government will provide any additional reports to the defense upon receipt.  The government will also timely provide CVs so that the chemists, and perhaps other experts, may be evaluated and cross-examined by defense and summaries of anticipated expert testimony in accordance with the standard District Court pre-trial Order.

To date, the government has complied with the requirements of Rule 16 of the Federal Rules of Criminal Procedure.  The government's delivery of the voluntary discovery materials renders the remaining discovery requests moot.  Pre-trial discovery is an on-going effort.  If additional discovery materials become available, the government will disclose them without undue delay.  See Rule 16(c).

## B.     NO BILL OF PARTICULARS IS MERITED.

"Acquisition of evidentiary detail is not the function of the bill of particulars." United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) (internal quotation omitted). Rather, the bill of particulars serves to provide a defendant with information necessary for preparation of his defense and to avoid prejudicial surprise at trial.  Id.  And "necessary" means more than merely "useful"; if the defendant has been given adequate notice of the charges against him through the indictment, discovery, or other means, the government is not required to disclose additional details, however useful to the defense, about its case.  See United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987) (internal citations omitted); United States v. Payden, 613 F. Supp. 800, 816 (S.D.N.Y. 1985); see also United States v. Cephas, 937 F.2d 816, 823 (2d Cir. 1991) (bill of particulars not required to allege specific activities attributed to defendant in drug conspiracy where indictment is otherwise sufficient and names co-conspirators).

In this case, the defendant moves for a bill of particulars as to Count One.  See Dkt. 15-1  ¶¶ 5-8.   Between the criminal complaint, indictment, voluntary discovery, and amended petition for violation of supervised release (attached as Exhibit 4), the

circumstances of the conduct charged in Count One could not be more clear.   The

defendant is not entitled to yet more information to prepare his defense to the indictment

and avoid prejudicial surprise at trial.   Since "[t]he court must be cognizant of the fact that a

bill of particulars confines the government's evidence at trial to the particulars furnished,"

Payden, 613 F. Supp. at 816, this Court would be acting well within its discretion in

balancing the government and the defendant's competing interests to deny this motion for a

bill of particulars.


## C.   THE GOVERNMENT IS IN CONTINUING COMPLIANCE WITH ITS BRADY AND GIGLIO OBLIGATIONS.

The defendant lists a number of requests that he claims are controlled by Brady v.

Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972).   See Dkt.

15-1 ¶¶ 9-12.


Pursuant to Brady and its progeny, the government is under an affirmative duty to

provide a defendant with exculpatory evidence, as well as evidence that the defense might

use to impeach the government's witnesses at trial.   See United States v. Bagley, 473 U.S.

667 (1985); Giglio v. United States, 405 U.S. 150 (1972).   The government is fully aware of

its obligations and responsibilities under Brady and acknowledges its continuing duty under

Brady to produce such material, if and when it is aware of it.


However, Brady does not create a constitutional right of pretrial discovery in a

criminal proceeding and it does not require that the prosecution reveal before trial the

names of witnesses.   Weatherford v. Bursey, 429 U.S. 545, 559 (1977); see also Lucas v.

Regan, 503 F.2d 1, 3 (2d Cir. 1974), cert. denied, 420 U.S. 939 (1975) ("[n]either Brady nor any other case we know of requires that disclosures under Brady must be made before trial"); United States v. Shaker, 543 F. Supp. 1059, 1061 (S.D.N.Y. 1982) ("Brady does not entitle a defendant to a general right of pre-trial discovery."). The Brady doctrine does not cover many of the requests made by the defendant.  For instance, evidence which is not exculpatory, but relevant for the purposes of impeachment, must be produced to the defense, but need not be turned over in advance of trial.  United States v. Nixon, 418 U.S. 683, 701 (1974); United States v. Coppa, 267 F.3d 132, 145-46 (2d Cir. 2001).  It does not require the disclosure of evidence affecting the credibility of prosecution witnesses prior to such time as it would otherwise become available under the discovery rules or the Jencks Act.  See United States v. Dotel, 1994 WL 25787, at *3 (S.D.N.Y. Jan. 21, 1994) (Brady impeachment material as to government's witnesses – i.e., Giglio material – is properly disclosed when the witness testifies at trial); United States v. Feldman, 731 F. Supp. 1189, 1200 (S.D.N.Y. 1990); United States v. Victor Teicher & Co., 726 F. Supp. 1424, 1442-43 (S.D.N.Y. 1989).  Impeachment material is normally disclosed at the same time as Jencks Act material – after the government witness has testified on direct examination.  See 18 U.S.C. § 3500(B); Coppa, 267 F.3d at 145-46.

Further, Brady does "not require the government to do defense counsel's pretrial preparation, nor develop defense strategy, nor does it require the government to point out the obvious."  United States v. Larson, 567 F. Supp. 500, 503 (S.D.N.Y. 1983); see also United States v. Ruggerio, 472 F.2d 599, 604 (2d Cir. 1973) ("The purpose of the Brady rule is not to provide a defendant with a complete disclosure of all evidence in the government's

file which might conceivably assist him in the preparation of his defense, but to assure that he will not be denied access to exculpatory evidence known to the government but unknown to him.").

In this case, the government will provide <u>Giglio</u> material, i.e., promises of leniency or immunity agreements with government witnesses, plea and/or non-prosecution agreements and letters or memorandum of understanding regarding such, criminal arrest records of all prosecution witnesses, immoral, vicious or criminal acts committed by witnesses, prior inconsistent statements, any payments to witnesses or family members thereof, and all other promises or considerations given by government personnel to government witnesses or family members thereof, in accordance with the schedule set by the District Court prior to trial and no later than when the government produces and delivers the Jencks Act material in this case.   Courts have routinely held that a prosecutor's compliance with the disclosure of material under the Jencks Act is timely disclosure under <u>Brady</u>.   <u>See</u> <u>United States v. Martino</u>, 648 F.2d 367, 384 (5th Cir. 1981) ("When alleged <u>Brady</u> material is contained in Jencks Act material, disclosure is generally timely if the government complies with the Jencks Act." (citation omitted)); <u>United States v. Anderson</u>, 574 F.2d 1347, 1352 (5th Cir. 1978) (same); <u>United States v. Persico</u>, 621 F. Supp. 842, 870 n.3 (S.D.N.Y. 1985) (same).

Therefore, the Court should find that the government is in compliance with its <u>Brady</u> and <u>Giglio</u> obligations and deny the defendant's motion.

**D.    GOVERNMENT'S RULE 12(b)(4)(A) NOTICE.**

The government intends to use all items of evidence that the defendant has been provided with or been made aware of in accordance with Federal Rule of Criminal Procedure 12(b)(4)(A).  Contrary to the defendant's request (Dkt. 15 p.1 and Dkt 15-1 p.7), Rule 12(d)(2) does not appear to exist or provide for any notice requirements.

**E.    DEFENDANT'S REQUEST FOR DISCLOSURE OF EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 404(b), 608 AND 609.**

The defendant moves for pretrial disclosure of any evidence the government intends to introduce at trial pursuant to Rules 404(b), 608 and 609 of the Federal Rules of Evidence.  See Dkt. 15-1 ¶ 17.  The government will provide notice of such information to the defense pursuant to the District Court's trial Scheduling Order, which has yet to be issued.

Rule 404(b) of the Federal Rules of Evidence requires the government to provide "reasonable notice in advance of trial" of the "general nature" of prior uncharged crimes that the government intends to use at trial.  No set timetable for notice is required, and evidence the government may seek to offer at trial often changes as the proof unfolds or as possible defenses are revealed at trial.  United States v. Aguirre-Parra, 763 F. Supp. 1208, 1217 (S.D.N.Y. 1991).  The reasonableness of Rule 404(b) notice is determined by the particular circumstances of the case.  United States v. Falkowitz, 214 F. Supp. 2d 365, 393 (S.D.N.Y. 2002) (permitting disclosure of Rule 404(b) evidence two weeks before trial).

In this case, the defendant has not advanced any concrete reason for early disclosure of Rule 404(b) evidence, see Falkowitz, 214 F. Supp. 2d at 393, but the government will

disclose this type of evidence, if any is classified as such, at the defendant's request to streamline trial preparations and the disposition of his pre-trial motions. The government will continue to disclose evidence in its possession which might fall within the ambit of Rules 404(b), 607, 608, and 609, and will provide notice of its intention to rely upon such evidence at the time it is ordered to do so by the trial court. Nevertheless, the government notes that it has no obligation to provide a defendant with any information that could be used to impeach him pursuant to Rule 608, should he elect to testify. See United States v. Livoti, 8 F. Supp. 2d 246, 250 (S.D.N.Y. 1998); see also United States v. Song, 1995 WL 736872, *7 (S.D.N.Y. Dec. 13, 1995) ("Rules 608 and 609 do not require the government to produce notice of impeachment evidence."); United States v. Comer, 1996 WL 492704, *1 (N.D.N.Y. Aug. 23, 1996) (premature to disclose impeachment evidence until witnesses testify).

Furthermore, the government preliminarily notifies the defendant that it intends to introduce at trial, pursuant to Rule 404(b), all prior criminal conduct acts or wrongs for the purpose of showing proof of a defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, and the absence of mistake or accident. This notice is only preliminary in nature and is not intended to foreclose the government from relying on other Rule 404(b) evidence should it deem the introduction of such evidence appropriate at before or during trial. The government will provide the defendant with more definitive notice of its intent to rely on 404(b) evidence when directed by the trial judge, or during trial, if the trial judge excuses pre-trial notice on the showing of good cause. In accordance with usual

administrative practices of the trial court, issues relating to the admissibility and use of such evidence should be resolved by the trial judge at the time of pretrial conference in this case.

**F.   THE DEFENDANT'S MOTION REGARDING SUPPRESSION OF STATEMENTS ARE INSUFFICIENT PLEADINGS TO MERIT ANY EVIDENTIARY HEARING OR OTHER RELIEF.**

Petix moves to suppress the statements he made in response to questioning by probation officers upon their discovery of him with a smartphone and laptop.  See Dkt. 15-1 ¶¶ 18-25.  As, a threshold matter, a probationer has no right to remain silent or to counsel "when called upon to respond to the supervision efforts of his probation officer."  United States v. Conte, 99 F.3d 60, 65 (2d Cir. 1996) (quoting United States v. Rea, 678 F.2d 382, 390 (2d Cir. 1982)).  Nor is the supervisee "compelled" under the Fifth Amendment when he answers to his probation officer.  The privilege against self-incrimination generally is not self-executing.  United States v. Jennings, 652 F.3d 290, 303 (2d Cir. 2011) (quoting Minnesota v. Murphy, 465 U.S. 420, 425 (1984)).  "So long as the probationer has not been told that he would lose his freedom if he invoked his Fifth Amendment privilege, a statement is not deemed 'compelled' merely because the probation officer has the authority to 'compel the probationer's attendance and truthful answers,' or because the probation officer 'consciously sought incriminating evidence.'"  Jennings, 652 F.3d at 304 (quoting Murphy, 465 U.S. at 431).

In this case, Petix could have asserted his privilege against self-incrimination and refused to answer the questions posed by probation officers about the ownership and use of the devices.  Instead, he chose to falsely disclaim ownership and use of the devices.

Whatever right the Fifth Amendment may have given him to refuse answer, it did not confer the right to lie.  See Brogan v. United States, 522 U.S. 398, 404-05 (1998) ("Proper invocation of the Fifth Amendment privilege against compulsory self-incrimination allows a witness to remain silent, but not to swear falsely." (internal quotations omitted)).

Additionally, nor was Petix in custody for purposes of Miranda.  The probation officers encountered Petix in a public coffee shop.  They approached him as he sat at his table.  The two plainclothed officers started by simply asking a few questions as recited above at page 4.  As can be seen in Exhibits 2 and 3, in no way was Petix restrained at the time of this initial encounter.  The probation officers later directed Petix from his seat in the coffee shop to the parking lot for further questioning, but the authority of a probation officer to compel a supervisee's attendance for questioning does not transform such interview into a custodial interrogation that necessitates Miranda warnings.  See Murphy, 465 U.S. at 431 (where probation officer summoned supervisee and questioned him about an uncharged rape and murder, such interview was not custodial interrogation meriting suppression of his confession in later trial on such charges); Jennings, 652 F.3d at 303-05 (rejecting suppression argument against probation officer summoning supervisee to question him on new allegations of accessing child pornography).

The motion filed by his counsel asserts factual allegations that are simply false and unsupported by the affidavit of any individual with personal knowledge of the circumstances of Petix's encounter with the probation officers on the night of December 3, 2015.  The motion claims that Petix "was arrested, and subsequently questioned, as he left

court for a related charge." Dkt. 15-1 ¶ 20.  This claim is pure fiction.  There was no court and no charges.  Nor was Petix arrested, then questioned.  He was questioned first, and, as a result of his lies to Probation, arrested.

The motion also claims that Petix was interrogated while "under arrest in the inherently coercive environment of a police station."  Dkt. 15-1 ¶ 22.  To the contrary, all relevant questioning occurred in the coffee shop and its parking lot.  These inexplicably incorrect allegations in the motion demonstrate the wisdom of the usual practice of requiring that, "as a threshold matter, [factual assertions in support of a defense motion for suppression] must be made in an affidavit by a defendant, not an oral assertion by the defendant or his attorney."  United States v. Cook, 348 F. Supp. 2d 22, 27, n.3 (S.D.N.Y. 2004).  Petix has not filed an affidavit to justify any of his suppression claims, including his (false) assertion that "[a]ny statement made by Defendant were involuntary as he was threatened by law enforcement officials and promises were made to him to get him to speak to law enforcement."[4]  Dkt. 15-1 ¶ 24.  In the absence of such an affidavit, his motion to suppress his statements to Probation should be summarily denied.

## G.   THE DEFENDANT'S MOTION REGARDING SUPPRESSION OF PHYSICAL EVIDENCE ARE LIKEWISE INSUFFICIENT PLEADINGS TO MERIT ANY EVIDENTIARY HEARING OR OTHER RELIEF.

The defendant moves to suppress "evidence obtained during a search of his person on December 3, 2015," Dkt. 15-1 ¶ 26, despite acknowledging that nothing was found on

---

[4]     The government notes that, based on Petix's persistent denials to Probation and HSI about his ownership and use of the smartphone and laptop, he clearly did not succumb to any threat, pressure, or promise to speak.  Had he actually felt coerced into speaking to the officers and agents, he would have admitted to his conduct instead.

his person.  See id. at ¶ 28.   Then, without claiming any expectation of privacy in the

smartphone, laptop computer, or any of the flash drives, or the premises where they were

found, he moves for a hearing to determine the reasonableness of any search or seizure of

these devices.  See id. at ¶¶ 29-30.  His motion should be denied for lack of standing, or

alternatively, because any search or seizure was reasonable.


The Fourth Amendment "protects people, not places."  Katz v. United States, 389

U.S. 347, 351 (1967).   A defendant who lacks a legitimate expectation of privacy in a

premise has no Fourth Amendment rights to assert against the admission of evidence

recovered in that premise.  See Rakas v. Illinois, 439 U.S. 128, 143 (1978).  Therefore, "[a]

defendant seeking to suppress evidence must demonstrate by a preponderance of the

evidence that he had a reasonable expectation of privacy in the location or items searched."

United States v. Hemingway, 2007 WL 499470, at *8 (W.D.N.Y. Feb. 13, 2007) (citing

Rakas, 439 U.S. at 143).   "[N]either ownership of an item nor possession of it . . . is alone

sufficient to establish a legitimate expectation of privacy."  United States v. Paulino, 850

F.2d 93, 96 (2d Cir. 1988).


To merit a suppression hearing, a defendant needs to establish such standing.  "If the

defendant's request for a hearing is not accompanied by a sufficient specification of the

factual basis for the characterization, the district court is not required to hold a suppression

hearing."  United States v. Cook, 348 F. Supp. 2d 22, 28 (S.D.N.Y. 2004) (citing United

States v. Mathurin, 148 F.3d 68, 70 (2d Cir. 1998)); see also United States v. Samuel, 2010

WL 1644253, at *2 (W.D.N.Y. Apr. 7, 2010) (citing United States v. Aiello, 814 F.2d 109,

113-14 (2d Cir. 1987)).   "More particularly, an attorney's affidavit, absent personal knowledge is insufficient to justify a suppression hearing."   Cook, 348 F. Supp. 2d at 28 (citing United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967)).   "[A]s a threshold matter, such a claim must be made in an affidavit by a defendant, not an oral assertion by the defendant or his attorney."   Id. at 27, n.3.

In this case, Petix has failed to establish that he had a reasonable expectation of privacy in the smartphone, laptop, any of the six flash drives, and the premises in which they were found.   To the contrary, Petix has consistently denied having access to the devices.   On the night of December 3, 2015, U.S. Probation Officers found Petix sitting in a coffee shop that was open to the public.   With respect to the smartphone and laptop (which had one flash drive plugged in) that were on the table in front of him, Petix told Probation that he neither owned nor used them.   Probation then went to the car in the parking lot of the coffee shop, in which Petix arrived at the coffee shop and in which his girlfriend and two minors were sitting.   In a bag in the car, Probation recovered five more flash drives (and an unlabeled bottle of Adderall).   To the government's knowledge, Petix personally has never claimed any relationship to the flash drives.   Therefore, Petix has no standing to challenge the search or seizure of any of the electronic devices.

Should the Court find that Petix had a legitimate expectation of privacy in any of the devices and the premises in which they were found, their search and/or seizure were reasonable under the Fourth Amendment.   "Fourth Amendment protections extend only to unreasonable government intrusions into legitimate expectations of privacy."   United States

v. Reyes, 283 F.3d 446, 457 (2d Cir. 2002) (internal quotations omitted).   "For an individual's expectation of privacy to be legitimate, he must have exhibited an actual (subjective) expectation of privacy and the expectation must be one that society is prepared to recognize as reasonable."   Id. (internal quotations omitted).   Convicted defendants serving court-imposed terms of supervised release that authorize the discretionary or unannounced search of particular premises by probation officers have "significantly diminished" expectations of privacy in such premises.   See id. at 457, 461 (rejecting challenge to search of defendant's home where his terms of supervised release authorized home visits "at any time" by Probation).   Such supervision is "a special need of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large."   Id. at 461 (quoting Griffin v. Wisconsin, 483 U.S. 868, 875 (1987)).

Petix was and still is on court-ordered supervision following a felony conviction for distribution of child pornography.   According to the terms of his supervised release, Petix "shall permit a probation officer to visit him . . . at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer."   Ex. 1, p.3.   Additionally, "[a]s triggered by impermissible/suspicious activity, [he] shall consent to and cooperate with unannounced examinations of any computer equipment owned or used by [him]."   Id. at p. 4.   Regardless of consent, "[t]he defendant shall submit to a search of his person, property, vehicle, place of residence or any other property under his control, based upon reasonable suspicion, and permit confiscation of any evidence or contraband discovered."   Id.   Under these terms, the probation officers who encountered Petix at the coffee shop acted reasonably in any search or seizure of the electronic devices in this case.

## H.    PRESERVATION OF EVIDENCE, INCLUDING NOTES.

The United States has no objection to the request that the government agents retain notes taken during the investigation of this case.  As a matter of routine practice, all federal law enforcement agencies already do so; and the prosecutor will request the agents to retain their notes relevant to this investigation, which notes have not resulted in the preparation of a final report.   See United States v. Wei, 862 F. Supp. 1129, 1139 (S.D.N.Y. 1994). However, the defendant's request covers material that may not be Jencks material and so may exceed the government's obligation under 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2. The retention of agents' notes is not required as long as the notes are subsequently incorporated into a final report.   United States v. Elusma, 849 F.2d 76, 79 (2d Cir. 1988); United States v. Sanchez, 635 F.2d 47, 66 n.20 (2d Cir. 1980); United States v. Percan, 1999 WL 13040 (S.D.N.Y. 1999); United States v. Hilario, 1990 WL 106831 (S.D.N.Y. 1999). Moreover, even if retained, rough notes are not discoverable, even as Jencks Act material. United States v. Koskerides, 877 F.2d 1129, 1133 (2d Cir. 1989).


## I.    GOVERNMENT'S CROSS-DEMAND FOR RECIPROCAL DISCOVERY.

Pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure, the government demands that the defendant provide the government the opportunity to inspect and copy or photograph books, papers, documents, photographs, tangible objects or copies or portions thereof which are within the possession, custody or control of the defendant and which the defendant intends to introduce as evidence in chief at the trial.

In addition, the government also demands that the defendant permit the government to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case or copies thereof within the possession or control of the defendant which the defendant intends to introduce as evidence in chief at trial or which were prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to that witness's testimony.

Finally, the government will demand, upon the District Court's setting a trial date and accompanying Scheduling Order, that the defendant provide a summary of any testimony that the defendant intends to use under Rule 702, 703, or 705 of the Federal Rules of Evidence at trial.

## **CONCLUSION**

The government respectfully requests that the Court deny the defendant's omnibus motion (Dkt. 15), except where indicated to the contrary above.

DATED:  Buffalo, NY, August 31, 2016.

WILLIAM J. HOCHUL, JR.
United States Attorney

By:     s/WEI XIANG
        Assistant United States Attorney
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, NY  14202
        716/843-5806
        Wei.Xiang@usdoj.gov