UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-vs-

RICHARD PETIX,

          *Defendant.*

CASE NO. 15-CR-227-CJS-HBS

PETIX'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

    The defendant, Richard Petix, by and through his attorneys Matthew R. Lembke and Stephen M. Leonardo, files this response to the government's objections to Magistrate Judge Scott's report and recommendation that the Court dismiss Count Two of the superseding indictment against Petix charging him with operating an unauthorized money transmitting business in violation of 18 U.S.C. § 1960.

## INTRODUCTION

    I have read – more times than I wish to recall – the multiple pleadings, and objections, responses, motions, and arguments made by the lawyer for the United States of America in his effort to defend his decision to charge Petix in connection with Petix's use and sale of bitcoins.

    And as I research the particular issues of the day, I become more amazed at – and more disillusioned about – the subject we are discussing, and how we got here in the context of Rick Petix's violation of supervised release case.

As a result, I feel compelled to say that it seems somewhat obvious – based on the case law and the other information we have read about the Department of Justice's efforts to prosecute "Bitcoin" and other cyber-currency related cases – that the government lawyer in Petix's case is more interested in being among the first in this district (if not *the* first) to prosecute a "cyber-currency" case than he is about ensuring a fair and just result for Rick Petix's transgressions.

### BITCOINS ARE NOT "MONEY" OR "FUNDS" UNDER 18 U.S.C. § 1960

After separating the wheat from the chaff in the government's objections to the Magistrate's report and recommendation, the prosecutor's argument boils down to this: The district court in *United States v Faiella,* 39 F. Supp.3d 554, 545-46 (S.D.N.Y. 2014) decided that – based on a definition in one dictionary – Bitcoin was "money" or "funds" under 18 U.S.C. § 1960. Thereafter, two other district courts – in *United States v. Budovsky,* 2015 U.S. Dist. LEXIS 127717; 2015 WL 5602853 (S.D.N.Y, September 23, 2015), and *United States v. Murgio,* 2016 U.S. Dist. LEXIS 131745 (S.D.N.Y 2016) – adopted the *Faiella* court's conclusions.

According to the government, therefore, Magistrate Judge Scott's well-reasoned and exhaustive analysis leading to the conclusion that Bitcoins are not, in fact, "money" or "funds" under 18 U.S.C. § 1960 is incorrect.

What should not be lost on this Court, however, is the context of the cases in which the district courts in the Southern District of New York came to their conclusions.

2

Specifically, in the principal case, *Faiella,* the defendant, Robert M. Faiella, was among the primary actors in the operation commonly known as the "Silk Road." In 2015, then-head of the United States Attorney's office's Criminal Division, Leslie R. Caldwell describe Silk Road, as follows:

> Silk Road – designed to act as a black-market bazaar completely free from government regulation and oversight – attempted to enable its users to exchange illegal drugs and other unlawful goods and services anonymously and beyond the reach of law enforcement. It emerged as one of the most extensive criminal marketplaces on the internet. Before it was dismantled by law enforcement, Silk Road was used by thousands of drug dealers and other vendors to distribute hundreds of kilograms of illegal drugs and other unlawful goods and services to well over a 100,000 buyers, and has been linked to at least six overdose deaths around the world. Further, Silk Road was also used to launder hundreds of millions of dollars derived from these unlawful transactions.[1]

This is hardly close to the conduct in which Petix is alleged to have engaged.

The first case that relied on *Faiella,* was *United States v. Budovsky.* That case involved the prosecution of Arthur Budovsky – one of the creators of business called "Liberty Reserve." Ms. Caldwell described "Liberty Reserve" as follows:

> Liberty Reserve quickly became one of the principal money transfer agents used by cybercriminals around the world to distribute, store and launder the proceeds of their illegal activity. Like e-Gold, any would-be account holder needed little more than a working email address to move funds around the globe. Again, this virtual currency platform became a favorite of cybercriminals and other tech-savvy wrongdoers, enabling them to engage in anonymous financial transactions, all conducted in violation of BSA requirements.

---

[1] https://www.justice.gov/opa/speech/assistant-attorney-general-leslie-r-caldwell-delivers-remarks-aba-s-national-institute

3

Before the government shut down Liberty Reserve in 2013, it had accumulated more than one million users worldwide, including more than 200,000 in the United States, who conducted approximately 55 million transactions through its system totaling more than $6 billion in funds. These funds included suspected proceeds of credit card fraud, identity theft, investment fraud, computer hacking, child pornography, narcotics trafficking and other crimes.[2]

Again, hardly similar, in any regard, to the circumstances for which Rick Petix's is alleged to have been involved.

The next case, *Murgio,* involved allegations of the named defendant, Anthony R. Murgio, was operating a website that was, in reality, a large-scale Bitcoin exchange business. It included allegations that Murgio and others engaged in a scheme to bribe the chairman of the board of a local credit union in order to obscure the illegal nature of Murgio's business.[3]

Murgio's conduct is not even remotely close to what Petix is alleged to have done in our case.

As the Court knows, the allegations against Petix are simply that he purchased bitcoins on the internet with United States dollars and then later sold them for United States dollars in arms-length, two-party transactions. Each of his sales were made to willing purchasers. Petix made money on these transactions because he bought the bitcoins at a lower cost than the cost for which he sold them.

---

[2] https://www.justice.gov/opa/speech/assistant-attorney-general-leslie-r-caldwell-delivers-remarks-aba-s-national-institute
[3] *Murgio, supra* at page 1.

The total amount of Bitcoin transactions in which Petix is alleged to have engaged is about $200,000 – all of which he deposited into his own bank account.

In its multifarious pleadings and allegations, the government – almost without fail – holds forth on the fact that the statute under which it is prosecuting Petix for his sale of bitcoins (18 U.S.C. § 1960) was enacted "to provide the United States government with new tools to combat the financing of terrorism and other financial crimes."[4]

The prosecutor even quotes at length from legislative history and the House of Representatives report concerning the need for this legislation. He quotes Congress's reference to the manner in which Osama Bin Laden and Al Qaeda used informal banking systems to finance terrorism.[5]

Rick Petix's case has nothing to do with Al Qaeda or any other terrorist network. It has nothing to do with money laundering. It has nothing to do with the financing of any type of illegal activity.

This case does not even remotely involve any of this type of the conduct to which the prosecutor repeatedly relies in defense of his decision to charge Petix with operating an unauthorized money transmitting business.

---

[4] *See, e.g.* Docket No. 42, p. 5 (citations omitted)
[5] *Id.* (citations omitted)

And it is in the context of the allegations of Petix's case – not in the context of the sensationalized circumstances of *Faiella*, or *Budovsky*, or *Murgio*, that Magistrate Judge Scott made his dispassionate and thorough (if not exhaustive) analysis of 18 U.S.C. § 1960. It is in the context of Petix's case that he reached his sound conclusion that, under the law, Bitcoin.

And as a result of this dispassionate analysis and sound conclusion, Magistrate Judge Scott was compelled to determine that the charge against Petix for operating an unauthorized money transmitting business must be dismissed.

We rely on the Magistrate Judge's comprehensive and persuasive legal analysis of the issue of whether Bitcoin qualifies as "money" or "funds" under 18 U.S.C. § 1960. We have conducted additional legal research on this precise issue and have found no new case law or other authority that has not already been cited by the Magistrate Judge or the government.

Based on the foregoing, Petix requests that, for the reasons set forth in the Magistrate Judge's report and recommendation, the Court adopt the findings of that R & R and dismiss Count Two of the indictment against Petix charging him with operating an unauthorized money transmitting business.

### RELIEF IN THE ALTERNATIVE

In the event this Court should fail to adopt the Magistrate Judge's Report and Recommendation, and refuse to dismiss the Section 1960 charge against Petix for the reasons set forth in the report and recommendation, then we remind the

Court that Petix has raised other, different, specific challenges in support of dismissal of the Second Count of the superseding indictment. Specifically, that Petix was not engaged in money transmitting "business" as contemplated by the statute.

If the Court disagrees with the Magistrate Judge on whether Bitcoin constitutes "funds" or "money" under the statute, we request that the Court refer the matter back to the Magistrate Judge for determination of Petix's additional arguments for dismissal.

Dated: February 6, 2017

/S/ Matthew R. Lembke  
Matthew R. Lembke  
45 Exchange Blvd., Suite 925  
Rochester, New York 14614  
Telephone: [585] 454-3322  
matt.lembke@cmllawfirm.com