IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v. 15-CR-227-CJS

RICHARD PETIX,

Defendant.

---

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S AMENDED OBJECTION TO PSR**

THE UNITED STATES OF AMERICA, by and through its attorneys, James P. Kennedy, Jr., Acting United States Attorney for the Western District of New York, Wei Xiang, Assistant United States Attorney, of counsel, hereby files its response to the defendant's amended objection (Dkt. 89) to the Presentence Investigation Report (Dkt. 84).

The amended objection supplements the defendant's original objections (Dkt. 82) with the argument that he was selling bitcoins mainly as an investor and that for every bitcoin transaction to be counted against him under Guidelines § 2S1.3(a)(2), the government must prove that that transaction was an act of money transmission and not an investment cash-out. All other arguments in the amended objection regarding the offense level for Count 2 are unchanged from the original objections, to which the government had already responded (Dkt. 83). The government, therefore, adopts and incorporates by reference its previous response, and responds herein only to the defendant's new argument.

The defendant misinterprets the FinCEN ruling on which he relies (Dkt. 89-2). The 2014 ruling was made to an unspecified "Company" whose identity was redacted and was published by FinCEN as guidance to financial institutions. Id. at pp.4-5, n.12 (citing 31 C.F.R. §§ 1010.711-717); see also 31 C.F.R. § 1010.715 ("A ruling issued under this section shall have precedential value, and hence may be relied upon by others similarly situated, only if FinCEN makes it available to the public through publication on the FinCEN Web site under the heading "Administrative rulings" or other appropriate forum." (emphasis added)). The defendant cites to the ruling while ignoring whether he was similarly situated to the Company. He was not.

At the heart of the cited FinCEN ruling is this recitation of the Company's business model:

> [T]he Company intends to limit its activities to investing in convertible virtual currencies for its own account, purchasing virtual currency from sellers and reselling the currency at the Company's discretion, whenever such purchases and sales make investment sense according to the Company's business plan. The seller would offer its virtual currency to the Company . . . and the Company would sell all or part of its virtual currency at a virtual currency exchange after receipt from the seller, at a time of the Company's choosing based on the Company's own investment decisions.

Dkt. 89-2 p.1 (emphases added).

Contrary to his factually unsupported post-hoc claim of being an investor, the defendant did not act like the Company. The defendant had access to a virtual currency exchange through which he could have liquidated bitcoins at any time and volume at his discretion. He had a bitcoin account on a major online exchanger, Coinbase.com. According to Coinbase records, he created his account on November 19, 2013, well before

the period in Count 2. If he were simply an investor who could rely on the FinCEN ruling for peace of mind, he would have cashed out all of his bitcoins through Coinbase, however many he wanted, wherever he wanted, whenever he wanted, according to his alleged investment plan. He knew this; Coinbase records show that he bought over 11 bitcoins for $4,263.74 and sold over 15 bitcoins for $8,342.46 through the exchange.

Instead, the defendant turned to a different platform, LocalBitcoins.com, for his business. Advertising his services to strangers across the United States, he arranged late night meetings, traveling an aggregate thousands of miles between Rochester and Buffalo, conducting face-to-face transactions in coffee shops, subjecting himself to the expenses associated with such and the potential for robbery, theft, and fraud. He also took all of the anonymization precautions of individuals (such as his own customers) seeking to cover their tracks in their unlawful activity.[1] And he hid his business from Probation, lying when caught. The defendant's subterfuge and consciousness of guilt show that the $203,182.96 in bitcoin transactions cited in the government's response (Dkt. 83) to his original objections were part of an unlawful course of conduct, and he knew it.

Furthermore, the defendant sold bitcoins to his customers at their discretion, not his. How many he sold/transmitted in any transaction was based on their needs, not his. When the transactions occurred was again based on their needs for the funds, not his, and not according to any fluctuation or arbitrage in bitcoin value. He sold when bitcoin was high,

---

[1] He continues to use these measures as both a sword and a shield. He attacks the government's case as having inadequately traced his transactions, yet withholds the decryption keys necessary to reveal the contents of his flash drives, at least one of which holds a bitcoin wallet.

and he sold when bitcoin was low. By continuously being available to service his customers at the times of their choosing based on their business needs, the defendant was more like the exchange than the Company from the FinCEN ruling. Therefore, his transactions should also be treated as those of an exchange, subject to § 1960 and § 2S1.3.[2]

## CONCLUSION

For the foregoing reasons, the Court should deny the defendant's objections on Count 2 and adopt the calculations in the PSR finding his total offense level to be 16 and guideline imprisonment range to be 27 to 33 months.

DATED: Buffalo, New York, August 28, 2017.

JAMES P. KENNEDY, JR.
Acting United States Attorney

By: s/WEI XIANG
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, NY 14202
716/843-5806
Wei.Xiang@usdoj.gov

[2] The defendant's mention that his "investment" bitcoin transactions "were two-party transactions between Petix and the buyers" (Dkt. 89 p.5) is a red herring with no bearing on this analysis. Receiving U.S. currency from his customers and transmitting its value in the form of bitcoins to addresses provided by the customers, whether controlled by them or third parties, is "transferring funds on behalf of the public by any and all means." § 1960(b)(2); see also 31 C.F.R. § 1010.11(ff)(5)(A) ("money transmission services" includes "the acceptance of currency, funds, or other value that substitutes for currency from one person and the transmission of currency, funds, or other value that substitutes for currency to another location or person by any means"). Therefore, all of his transactions through LocalBitcoins.com were acts of money transmission under § 1960 and § 2S1.3.