```
 1              IN THE UNITED STATES DISTRICT COURT

 2              FOR THE WESTERN DISTRICT OF NEW YORK

 3                      ROCHESTER DIVISION

 4  ----------------------------------

 5  THE UNITED STATES OF AMERICA,

 6

 7  -versus-                        DOCKET NOS: 15-CR-227

 8                                         06-CR-6007

 9  RICHARD PETIX,

10                      Defendant.

11  ----------------------------------

12                   TRANSCRIPT OF SENTENCING

13          BEFORE THE HONORABLE CHARLES J. SIRAGUSA

14              UNITED STATES DISTRICT JUDGE

15            WEDNESDAY, SEPTEMBER 13, 2017

16
    A p p e a r a n c e s:
17
    On Behalf of the Government:
18
        Richard Resnick, Assistant US Attorney
19      Grace Carducci, Assistant US Attorney

20  On Behalf of the Defendant:

21      Mathew Lembke, Esq. and Stephen Leonardo, Esq.

22  On Behalf of the Probation Department:

23      Dave Spogen and Ivette Hernandez

24  R e p o r t e d   B y:

25      Briana L. Jeffords
```

1         (Whereupon, the proceeding commences at 11:02 a.m.)

2         THE COURT:  For the record, this is the matter of

3    the *United States versus Richard Petix*.  Come on up, Mr.

4    Petix.  For the record, you are Richard Petix?

11:06:44AM 5         THE DEFENDANT:  Yes, your Honor.

6         THE COURT:  And you are appearing with your

7    attorneys Mr. Lembke and Mr. Leonardo; is that correct?

8         THE DEFENDANT:  Yes, your Honor.

9         THE COURT:  Mr. Resnick is here on behalf of the

11:06:56AM 10   Government, and Ms. Carducci is here, and Special Agent

11   Breckler.  Is it Breckler?

12         SPECIAL AGENT BRECKLER:  Breckler, yes, your Honor.

13         THE COURT:  How do you say it?

14         SPECIAL AGENT BRECKLER:  Breckler.

15         THE COURT:  Breckler.  Sorry.  Special Agent

16   Breckler.  And Mr. Spogen and Ms. Hernandez are here on behalf

17   of probation.  This matter is on for sentencing.  In that

18   regard, I have received and reviewed the following:  The

19   revised presentence report dated August 3, 2017, the

11:07:21AM 20   Government's statement with respect to sentencing factors

21   dated July 17th, 2017, the original statement with respect to

22   sentencing factors and objections Mr. Lembke submitted dated

23   July 28, 2017.  However, based on our conversations last time

24   in court, Mr. Lembke did submit an amended supplemental

11:07:46AM 25   objection to the PSR along with the statement for parties with

1   respect to the sentencing factors dated August 18, 2017.  I

2   have the Government's original statement with respect to

3   sentencing factors dated July 17, 2017, and the response to

4   the original objections filed by the defendant dated

11:08:10AM 5   July 30th, 2017.  I, additionally, have the Government's

6   response to the defendant's amended objections to the

7   presentence report dated August 28th, 2017.  And I have

8   subsequent to that a statement -- statement sentencing

9   memorandum submitted by Mr. Leonardo dated September 1st,

11:08:33AM 10   2017, with a number of exhibits including transcript excerpts

11   and letters written by Dinah, is that how you say it?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Your fiancee, your mother, your dad,

14   and your brother Christopher Petix.  Now just for purposes of

11:08:54AM 15   the record, Mr. Resnick, has the Government received the

16   presentence investigation?

17             MR. RESNICK:  Yes, your Honor.

18             THE COURT:  Mr. Lembke, have you received the

19   amended report?

11:09:04AM 20             MR. LEMBKE:  Yes, I have.

21             THE COURT:  And have you gone over it with

22   Mr. Petix?

23             MR. LEMBKE:  He received a copy of it.

24             THE DEFENDANT:  Yes, your Honor.

11:09:11AM 25             MR. LEMBKE:  Yes, your Honor.

```
 1              THE COURT:  You read it yourself; is that correct?

 2              THE DEFENDANT:  Yes, your Honor.

 3              THE COURT:  Okay.  Now, I think I have a handle on

 4    this.  And I have some understanding I think or appreciation

 5    of the objections.  We will go through them in a second.  Let

 6    me ask you it this, Mr. Resnick, and feel free to throw a

 7    lifeline out to Ms. Carducci or Special Agent Breckler.  If I

 8    buy Bitcoins today, okay, I have Bitcoins.  And I want to hang

 9    onto them.  And then I want to sell them to Mr. Lembke for a

10    profit.  Is that a money transmitting business?

11              MR. RESNICK:  I would have to maybe just on those

12    facts, maybe it's not, but --

13              SPECIAL AGENT BRECKLER:  Your Honor --

14              THE COURT:  Help us out.

15              SPECIAL AGENT BRECKLER:  -- with respect to that

16    part of the 18 USC 1960, is that you are acting as a business.

17    So if you are to do it one time --

18              THE COURT:  No, I'm not saying one time.  If you

19    did it -- if -- here is what I'm saying --

20              SPECIAL AGENT BRECKLER:  If you did it multiple

21    times --

22              THE COURT:  Let me finish.  If I make my living by

23    selling -- by buying -- we know Bitcoins fluctuate.  I think

24    when this originally happened, one Bitcoin was $3,400.  I went

25    online today.  They are like $4,000, one Bitcoin today.  So I
```

Timestamps in left margin:
11:09:25AM (line 5)
11:09:48AM (line 10)
11:10:03AM (line 15)
11:10:17AM (line 20)
11:10:31AM (line 25)

1   decide, hey, understanding they fluctuate and I could end up

2   getting hosed, but I decide I'm going to buy Bitcoins and I'm

3   going to make my living by buying Bitcoins and then selling

4   them for a profit.  Is that a money transmitting business?  I

11:10:52AM 5   do it multiple times.  Yes or no.

6            SPECIAL AGENT BRECKLER:  Yes, your Honor, if you do

7   it multiple times --

8            THE COURT:  All right.  Let me stop you.

9            MR. RESNICK:  Can I just add on that?

11:11:00AM 10            THE COURT:  No, let me just -- because here is the

11   second circuit case that Mr. Lembke relies on it's *United*

12   *States versus V-E-L-A-S-T-E-G-U-I.*  And here is what it says.

13   It's charged under the same section.  The case involves the

14   money -- business of money transmitting.  Okay?  Here is what

11:11:23AM 15   the Second Circuit said, "a money transmitting business

16   receives money from a customer, and then for a fee paid by the

17   customer, transmits that money to a recipient in a place that

18   the customer designates usually a foreign country.  After the

19   customer gives the money transmitter an amount to send to the

11:11:45AM 20   designee, the transmitter notifies the payer with whom it has

21   a contractual arrangement in the recipient country.  The payer

22   then notifies the designated recipient of the money and pays

23   the money to the designee at the payee's office."

24            So here is my question, and this is a point made by

11:12:05AM 25   the defense, and this is consistent.  Mr. Leonardo, I don't --

1   and again, Mr. Resnick, if I knew before I went through this

2   last night that this was going to be an issue, I would have

3   told you.

4           MR. RESNICK:  I will have something to add to it

11:12:24AM 5   when you give me a chance.

6           THE COURT:  Okay.  And I just want to point out

7   something that Mr. Leonardo said because he referred to the

8   federal statue and said it makes reference to the state

9   statutes in New York and NYCRR.  And one of the things he

11:12:44AM10   cites is exception from the licensing requirements.  The

11   following persons are exempt from licensing requirements

12   otherwise applicable under this part.  Now this is in

13   reference to the state law, but it says "merchants and

14   customers that utilize virtual currency solely for the

11:13:00AM15   purchase or sale of goods or services or for investment

16   purposes."  And I may have this wrong, but it strikes me that

17   the defense argument is this:  We know that the defendant

18   plead guilty to engaging or operating an unlicensed money

19   transmitting business beginning on or about August 2014 and

11:13:30AM20   continuing to on or about December 3rd, 2015.  He plead guilty

21   to that.  I haven't seen the transcript because it's not ready

22   at the plea but either Mr. Lembke or Mr. Leonardo, I forget

23   which, makes reference to the fact that he admitted to

24   engaging in one transaction during that time, I think; is that

11:14:00AM25   correct, Counsel?

1              MR. LEONARDO:  That's correct, your Honor.

2              MR. LEMBKE:  At least one.

3              THE COURT:  At least one, but there was no amount

4  ever specified.

11:14:06AM 5              MR. LEMBKE:  That's correct.

6              THE COURT:  Okay.  So there is no amount specified.

7  So there was never any admission on the record that the money

8  transmitting business activities that he engaged in involved a

9  certain amount of money.  They are coming back and saying --

11:14:20AM 10  Mr. Leonardo in his papers says, listen, his adjusted offense

11  level on Count Two, the best we can be is 14 because you

12  should back out the $87,000 or so that resulted from

13  transactions with CD-1 or confidential informant one or two,

14  whatever it was, because he's saying that that doesn't fit the

11:14:48AM 15  definition of a money transmitting business.  And the argument

16  is just because you plead guilty during this time frame to

17  operating a money transmitting business, doesn't mean that any

18  transaction you had with Bitcoins violates the statute.  That

19  strikes me as his argument.  Is that correct, Mr. Leonardo?

11:15:07AM 20              MR. LEONARDO:  I think that's a fair

21  interpretation, your Honor.

22              THE COURT:  Mr. Lembke --

23              MR. RESNICK:  There is another argument that it was

24  also double counting.

11:15:12AM 25              THE COURT:  Forget the double counting because I

1   think this is a critical argument.

2           MR. RESNICK:  Sure.

3           THE COURT:  Mr. Lembke I thought goes even farther,

4   and he says you can't -- you are talking about the 109 -- and

5   I know I have the numbers wrong -- but the $109,000 in the

6   Bank of America account.  You are talking about the $87,000

7   more or so that resulted in these.  That's great, he says, but

8   you can't show how much of that money was a result of a money

9   transmitting business.  You can't show that.  You don't know.

11:15:41AM 10  And let me make this point:  Let's stop a second.  Let me ask

11  you this, Mr. Resnick, and then I will give you a chance.  Is

12  there any evidence that the transactions involving the

13  confidential -- I think you referred to them as confidential

14  informants -- were in effect as a result of operating a money

11:16:06AM 15  transmitting business where the only thing the PSI says that

16  Mr. Petix sold Bitcoins to these individuals?  It wasn't --

17  and again, I'm pointing out the definition in the Second

18  Circuit case which is consistent with the Fourth Circuit case

19  that a money transmitting business means that for a fee I

11:16:31AM 20  transmit money to a third party or entity.  So were those

21  transactions -- and we will start with Mr. Leonardo's

22  position.  He says those transactions have not been proven by

23  a preponderance of evidence to be within the gambit of this

24  money transmitting business.

11:16:57AM 25          MR. RESNICK:  If I may, I have a few arguments.

1  First, is that he did plead guilty to a money laundering

2  business which he would--

3          THE COURT:  Transmitting business.

4          MR. RESNICK:  Transmitting business which you would

11:17:06AM 5  just logically conclude is more than one.  A business is not

6  one transaction.

7          THE COURT:  Okay.  Let's say it was 20

8  transactions.

9          MR. RESNICK:  Okay.  So we have 20 transactions or

11:17:14AM 10  whatever.

11          THE COURT:  Whatever.  Okay.

12          MR. RESNICK:  Second of all, the way I understand

13  this is an investor, let's say, it's a stock investor.  It's

14  the same thing to me.  You have stock.  You buy it from a

11:17:27AM 15  brokerage.  And then when you want to sell your stock, I go to

16  Fidelity.  And I put in there, and the market takes it, and

17  sells it, and gives me whatever the price is.  I don't sell my

18  stock to Mr. Lembke.  Okay?  I'm not in the business of

19  selling stock individually like a brokerage firm or something

11:17:47AM 20  who is in the business of selling stock.  I buy stock as an

21  investor on the market, and I sell it in a brokerage.  Now,

22  there is a company called Coinbase which the defendant

23  actually used which when you buy a stock -- buy Bitcoins, you

24  buy it from them.  And then you can go and sell it to them

11:18:05AM 25  when you want to sell it at a higher price.  Now, what that

1   does is that records the sale.  My stock will be recorded, and

2   it's not anonymous.  So if he did his transactions as a

3   legitimate investor and do it through Coinbase, you don't have

4   to drive to Buffalo.  You don't have to go and find CDs, these

11:18:24AM 5   confidential informants, to sell my stock to Mr. Lembke.

6           THE COURT:  Let me just stop you right there

7   because I want to go back to the Second Circuit case and I

8   want to repeat it.  A money transmitting business receives

9   money, and then for a fee paid by a customer, transmits the

11:18:42AM 10   money to a recipient in`a place that the customer designates.

11   So I say to you so what.  So what.  So what if he wanted to go

12   to Buffalo and in a back alley sell his Bitcoins to

13   Mr. Lembke, and he made a profit from them.  So what.

14   Obviously, he made a heck of a profit in a few transactions.

11:19:06AM 15   They totaled $87,000.  And again, it looks like Special Agent

16   Breckler is chomping at the bit so you can certainly confer

17   with him.

18           MR. RESNICK:  I want to finish my arguments, if you

19   don't mind just so we can have a complete record.

11:19:17AM 20           THE COURT:  Sure.  Not at all.

21           MR. RESNICK:  So my argument then would be he could

22   have gone to probation and asked for permission to use a

23   computer to sell stock or Bitcoin through a brokerage right

24   from his bedroom or from wherever his phone was or whatever

11:19:30AM 25   permission he had on any media.  He didn't have to go and find

1   individual buyers.  What he did is use another company called

2   Local Bitcoin that is an anonymous way to sell these things.

3   There is no tracking.  There is no trace of them.  That's my

4   understanding that's what he used.  Again, I've got an

11:19:49AM 5   advertisement.  He advertised his business on the website or

6   whatever at the Local Bitcoin.  He has an advertisement to

7   sell Bitcoin if I can hand this to the Court.  We took a text

8   off his phone when he was arrested and in the text it says to

9   whoever he is talking to it says, "Sounds like a deal I can't

11:20:16AM10  refuse.  Over time, you will see that I value our business

11  relationship much more than stealing $3- to $700 one time and

12  ruining such a good thing."  Because the way they do it,

13  you've got to be together because you got to get the cash and

14  you got to get the Bitcoins at the same time, or you could rip

11:20:35AM15  somebody off and say, "Hey, give me your $700," and then I

16  won't give you the bit -- you don't give the Bitcoins, and the

17  guy is out $700.  In here, they are talking about their

18  business relationship.  And again, why, if this is a

19  legitimate investor is he doing it behind probation's back?

11:20:54AM20  And when caught says this is not my computer.  These flash

21  drives are not mine.  I was not selling Bitcoin.  I mean,

22  Judge, you have to circumstantially look at the situation

23  here.  He was conducting something under the radar, and it

24  fits within the definition.

11:21:12AM25              THE COURT:  How does it fit?  I am going to come

1    back to this.  And let me quote the Fourth Circuit case which

2    cites the Second Circuit case a money transmitting business,

3    and that's what he is charged with running.  He has admitted

4    that during the time frame he was running a money transmitting

11:21:30AM 5   business.  The point I'm trying to make is how do you show --

6    they are objecting.  They are saying that you can't show --

7    again, little different arguments -- Mr. Leonardo is saying

8    you can't show that the $87,000 that he made in those three

9    transactions was a money transmitting business.  And

11:21:52AM 10  Mr. Lembke is going farther, and he is saying you can't show

11   what amounts of the 108 -- 202,000, whatever it is, was from a

12   money transmitting business.

13            MR. RESNICK:  But, your Honor --

14            THE COURT:  Here is what they are saying, though, A

11:22:10AM 15  money -- and this is what the Fourth Circuit says, "a money

16   transmitting business is one that, for a fee, accepts currency

17   for transfer within or out of the United States and then

18   transfers it out."  Same definition for the Second Circuit.

19   How is he doing that?  How is -- and let me make it simple.

11:22:28AM 20  It seems that a in money transmitting business there have to

21   be three entities:  The person who wants the money transferred

22   to a third person, the person who is going to transfer the

23   money, and that third party.  And if there is only two, I

24   don't care whether it's -- I'm not saying I'm right, but this

11:22:50AM 25  is how I read the case.  If there is two, I don't care whether

1  the sale occurs in a back alley at midnight.  I don't in care

2  if it occurs without a broker.  If there is only two people

3  involved, then it's not -- I mean, the argument that they are

4  making is that it's not a money transmitting business.  Again,

11:23:08AM 5  did you have a chance -- I don't know if you had a chance yet

6  -- did you have a chance to look at Mr. Leonardo's papers?

7          MR. RESNICK:  I did, your Honor.  And I was going

8  to ask a question.  I mean, I would assume this supercedes the

9  other prior filings.  You can't have two different filings by

11:23:23AM10  two different attorneys in the same case making two different

11  arguments.  So I think it was the Government's assumption that

12  the law figure they were arguing was at least 116 plus the

13  13,000.

14          THE COURT:  Well, it was somewhat confusing, but

11:23:34AM15  the point I want to make in referring to Mr. Leonardo's papers

16  is the one that I referred to.  And here's what he is saying

17  --

18          MR. RESNICK:  Where are you at?

19          THE COURT:  I'm on page -- it's not numbered, but

11:23:48AM20  mine is page four at the top.  It starts at paragraph 22 and

21  then goes down.  Reading from title in paragraph 23.  Title 18

22  Section 1960 is relevant here provides.  And then the key part

23  is B and fails to comply with the money transmitting business

24  registration requirements under Section 5330 of Title 31 of

11:24:18AM25  the United States Code.  It goes on in paragraph 24, Title 31

1  Section 5330 is relevant provides here.  And then it goes

2  down.  And the italics, I assume, is part of the statute; is

3  that correct, Mr. Leonardo?

4          MR. LEONARDO:  That's correct.

5          THE COURT:  It says that "this section shall not be

6  construed as superseding any requirement of the state law

7  relating to money transmitting businesses operating in such

8  state."  And then he goes on in paragraph 25 to talk about New

9  York law and regulations.  And then on the next page under

11:24:56AM 10  subparagraph C-2, he bolds that consumers that utilize

11  merchants and consumers that utilize virtual currency solely

12  for the purchase or sale of goods or services for investment

13  purposes.  In other words, there is no licensing requirement.

14  And that's the same argument that Mr. Lembke is making.  And

11:25:19AM 15  again, it goes back to the fact they are saying that if I sell

16  -- I will make it simple.  If I just sell to a third -- to one

17  other person, there is only two people, and the buyer doesn't

18  say I want you to transmit this money to a third party, and

19  the money that I'm making is the profit that I'm getting from

11:25:46AM 20  when I bought the Bitcoins to when I sold them, and I'm not

21  getting a fee to transmitting them to a third party, it would

22  appear that under the Second Circuit's definition that's not a

23  money transmitting business.  Agent Breckler?

24          SPECIAL AGENT BRECKLER:  Your Honor, with respect

11:26:05AM 25  to the initial transactions with CD-1, I can say that while

1    they were -- they were not initially face-to-face off of this

2    Local Bitcoins website.  So this Local Bitcoins website, to

3    further explain this, it's a place where users can buy and

4    sell Bitcoins.  Normally as a fee, so I have to go through and

11:26:26AM 5    see what the market rate was at the time of the transaction

6    versus what the advertisement --

7         THE COURT:  You are missing the point.  If the

8    purchaser is the end guy -- if the purchaser of the Bitcoins

9    -- that's where the Bitcoins are going to stay.

11:26:45AM 10        SPECIAL AGENT BRECKLER:  I understand that, your

11   Honor.  What Mr. Petix had to do in each one of these

12   transactions is send these Bitcoins from his wallet to a third

13   party, Local Bitcoins, to hold those Bitcoins in escrow.  And

14   then once the transaction had been verified by Mr. Petix, he

11:27:03AM 15   had received cash either at a face-to-face cash meet at a

16   location or when he had the $109,000 deposited into his bank

17   of America account and his fiancee's account, then he would

18   verify yes I received this money.  Local Bitcoins would take a

19   fee.  Mr. Petix -- I don't know because I don't have his whole

11:27:28AM 20   history because it is semi --

21        THE COURT:  You are missing the point.  It's him

22   taking the fee.  The definition of the money transmitting

23   business, the way I read it -- and again, I'm just going with

24   what the Second Circuit says.  I'm not bound by it.  It says

11:27:42AM 25   that if you are running a -- here is what it means if you are

1    running a money transmitting business.  It means that you --

2    that somebody comes to you and says, for example, listen, I

3    want to get -- I want to get $50,000 to my brother-in-law in

4    Yemen.  Can you help me out?  And I say yes, I can.  If you

11:28:02AM 5    give me two -- 2,500, I'll take care of it.  That's not what

6    happened here.  That's not what happened here.  So unless --

7    you're going to have to convince me that what he was running

8    was a money transmitting business as it has been defined by

9    the Second Circuit.  That's the hurdle and --

11:28:23AM 10          MR. RESNICK:  Judge, doesn't his plea of guilty

11    admit that he -- he admitted that he was running a money

12    transmitting --

13          THE COURT:  Absolutely.  It admits that during the

14    time frame -- that's their argument that during the time

11:28:33AM 15    frame, he was operating a money transmitting business.

16          MR. RESNICK:  And circumstantially, if you look at

17    the way he tried to hide it, and using advertisements, and

18    even talking about a business relationship, if you use that

19    circumstantially and his admission that he was running a

11:28:46AM 20    business, why would he run a business for one transaction but

21    be an investor for every other one?

22          THE COURT:  Let me stop you.  Let me stop you for a

23    second.  I am going off the PSI.  The way the PSI presents it

24    is that he sold to -- and let me read from the PSR.  I'm

11:29:22AM 25    reading from paragraph 54.  Cooperating defendant, CD-1,

1    identified Petix via a six pack photo line up.  CD1 was a

2    Buffalo based Bitcoin exchanger who had several hundred

3    thousands of dollars in transactions.  CD stated that he or

4    she met Petix for the purpose of buying Bitcoins between

11:29:42AM 5    August 22nd, 2014, and October 15th, 2015, on 14 occasions.

6    CD purchased approximately 199 Bitcoins with an approximate

7    value of $56,360 from Petix.  That's what it says in the PSR.

8    That's what it says.  And I'm telling you if that's what

9    happened unless you can show me how that fits the

11:30:04AM 10   definition -- no one is objecting.  Let me stop.  No one is

11   objecting to the statement in the PSR.

12            MR. RESNICK:  He plead guilty to running a

13   business.

14            SPECIAL AGENT BRECKLER:  Your Honor, I can show

11:30:16AM 15  that because I can go back and look at the accounts I have for

16   CD-1 and show that at sometimes he paid 102 percent of what

17   the market rate was which would be that fee.

18            THE COURT:  Let me stop you.  First of all, the

19   objections have been in.  The case was cited by Mr. Lembke.  I

11:30:37AM 20  am saying that I don't see how that -- how what -- objections

21   could have been made to the PSR by the Government.  I'm saying

22   I don't see how the statements in the PSR, the unobjected

23   statements in the PSR, on what he did with respect to the

24   $87,000 amounts to running a money transmitting business.  You

11:31:07AM 25  are right.  And here is the point I think you are missing, the

1  defense is not suggesting that he didn't operate a money

2  transmitting business during that time.  What they are

3  arguing, and maybe this is more of the point, is that not

4  every time he sold -- he exchanged Bitcoins was not a money

11:31:27AM 5  operating business.

6          MR. RESNICK:  And the argument to that is we have a

7  preponderance of evidence, not beyond a reasonable doubt, you

8  know --

9          THE COURT:  Right.

11:31:33AM 10          MR. RESNICK:  He plead to a money laundering

11  business -- or a money transmitting business, guilty.  Now

12  prove Government not all of these transactions were part of

13  it, but he used the same method and means.  So if he's using

14  the same method and means to sell --

11:31:47AM 15          THE COURT:  Identify for me one transaction that --

16  you never pinned him down.

17          MR. RESNICK:  We are using his plea agreement.  His

18  plea to I ran a money transmitting business.  And he did every

19  transaction the same way using -- not the way a normal

11:32:04AM 20  investor would do it, but using Local Bitcoins.  Isn't that

21  circumstantially enough to say that everything they did --

22          THE COURT:  But here -- well, let's carry your

23  argument to its logical conclusion.  If during that time there

24  was undisputable proof that Mr. Petix sold me Bitcoins.

11:32:26AM 25  That's it.  He just sold me Bitcoins.  You say that is part of

1   the money transmitting business.

2           MR. RESNICK:  I would say if he used the same means

3   which is Local Bitcoin, and he did it face-to-face, and the

4   way he did it.  And he plead guilty to that, he admitted that

11:32:37AM 5   the way he is --

6           THE COURT:  Let me stop you.

7           MR. RESNICK:  At least one of those transactions

8   the way he did it is illegal.  We showed -- and we can show

9   that he did all of those transactions the same way.

11:32:51AM 10           THE COURT:  Well, you haven't shown that.  But

11   we're at sentencing and no one has shown that to me.  But you

12   are still missing the point.  If -- how -- it doesn't -- what

13   he did then -- if what he did doesn't fit the definition of a

14   money transmitting business, is any -- and this is what I'm

11:33:16AM 15   asking you.  Is any transaction involving Bitcoins, whether it

16   fits the definition or not, that occurred during the time

17   frame of, what, August to whatever, December, is he

18   accountable to that?

19           MR. RESNICK:  Your Honor, he has two experienced

11:33:31AM 20   lawyers and with their advise --

21           THE COURT:  That's the argument.

22           MR. RESNICK:  -- he plead guilty to running the

23   business.

24           THE COURT:  You're not answering my --

11:33:39AM 25           MR. RESNICK:  And if he plead guilty -- he should

1   then not have plead guilty because there's no proof based on

2   what you're reading that he conducted a business.  But based

3   on his advise from his attorneys, he's admitting that he does

4   not fit in that definition in the Second Circuit that he did

11:33:51AM 5   conduct a money transmitting --

6          THE COURT:  That's not what they are saying.  I'm

7   trying to deal with the objections.  That's exactly what they

8   are saying in the objections.  They are saying -- what they

9   are saying is listen we are objecting.  He plead guilty.  The

11:34:06AM10   dispute is over the amount for which he should be held

11   accountable.

12          MR. RESNICK:  And my argument would be just like if

13   he was convicted at trial of running a business, I would then

14   go to the jury and say hey he did everything the same way,

11:34:20AM15   every transaction basically the same way.  So if you found him

16   guilty of doing one transaction --

17          THE COURT:  The PSR doesn't establish he did every

18   -- I don't know how he did the --

19          MR. RESNICK:  Well, we are having a hearing right

11:34:30AM20   now, and we are establishing that.  How do you want us to

21   establish that?  He did every transaction basically the same

22   way.

23          SPECIAL AGENT BRECKLER:  Basically the same way,

24   your Honor.  I just want, for the record, there was the

11:34:37AM25   face-to-face versus the cash into his Bank of America account.

1   Those are two different types of transactions.  They both use

2   --

3          THE COURT:  Okay.  Stop.  You're telling me.  Wait

4   a second.

5          MR. RESNICK:  It's the same thing.  The same

6   company except not just the face-to-face.

7          THE COURT:  Stop.  You are telling me he did every

8   transaction he same way and your agent is saying, well, that's

9   not correct.  He didn't do every one the same way.  Some he

10  did face-to-face and some he did otherwise.  But we are still

11  -- I'm trying to deal with the objections that they made.

12         MR. RESNICK:  Well, I think the bottom line is we

13  made our arguments.  He conducted -- I think the best argument

14  we have is he's admitted to doing this.  And the way he did it

11:35:10AM 15  then by a preponderance of evidence he did basically the same

16  thing for every transaction.  One was face-to-face.  One was

17  he would require the cash to go into his bank account first

18  for the Bitcoins, but he is basically using the same company,

19  the Local Bitcoins --

20         THE COURT:  Just show me --

21         MR. RESNICK:  And that is our argument.  And that's

22  all I can keep saying to you.

23         THE COURT:  Stop.

24         MR. RESNICK:  He plead guilty.

25         THE COURT:  I understand that.

1          MR. RESNICK:  If a jury found him guilty, I would

2   argue --

3          THE COURT:  Stop.  Time out.

4          MR. RESNICK:  Yeah.

11:35:32AM 5          THE COURT:  Just show me where on Mr. Xiang's

6   papers he makes that argument.  He had a chance to respond to

7   the objections.

8          MR. RESNICK:  What argument is that, your Honor?

9          THE COURT:  The argument that you are making that

11:35:42AM 10   each was done the same way, maybe he did, and I missed it.

11          MR. RESNICK:  I'm reading on page three the thing

12   that was filed on August 28th.

13          THE COURT:  All right.  Let's look at the

14   August 28th filing.

11:36:01AM 15          MR. RESNICK:  I'm looking at the second page the

16   first full paragraph which says "the defendant turned to a

17   different platform, Local Bitcoins, for his business.  He

18   advertised his service to strangers across the business which

19   I showed you some of his advertisements.  He arranged late

11:36:23AM 20   meetings, travelling.  He also took anonymous precautions."

21   So we are setting forth that he is doing this basically for

22   every transaction the same way using that platform that is

23   anonymous.  So he plead guilty.  A jury would find him guilty.

24   I would argue to the jury that everything is very similar.  So

11:36:39AM 25   therefore, all of the transactions beyond a reasonable doubt

1  are part of this fraud.  Circumstantially, I mean, why would

2  he plead guilty to doing one but not the others if the others

3  are done the same way.  So that's our argument.

4          THE COURT:  I'm just trying to say.  Let's think

11:36:59AM 5  about that because you raised a good point.  We go to trial.

6  We are at trial.  You're right.  He plead guilty.

7          MR. RESNICK:  Same as a trial verdict.

8          THE COURT:  All right.  But we are at trial.  Okay?

9  You show -- what are you going to show that he did these

11:37:12AM 10  transactions, basically, the same way even though some were in

11  person some were not, that he dealt with these individuals?

12          And then we get -- and then we get -- because you

13  brought up the trial, now we get to my instructions.  And I

14  say here is what you have to find.  They have to prove beyond

11:37:32AM 15  a reasonable doubt that he was running a money transmitting

16  business.  This is what it means.  Here is how the Second

17  Circuit has defined a money transmitting business.

18          The jury comes back and says what if we don't find

19  that he transferred them out to a third party for a fee.

11:37:45AM 20  Let's say we are at trial, Mr. Resnick, and you are the judge,

21  and the jury puts that question on you.  And they say, Judge,

22  here is how you define a money transmitting business.  What if

23  we don't find that there was any evidence that for a fee he

24  sent money to third party?  What do you tell them?

11:38:05AM 25          MR. RESNICK:  If that is the law as you say, then

1  he would be acquitted.  But we are beyond that.  He plead

2  guilty.

3          SPECIAL AGENT BRECKLER:  There is evidence though

4  --

11:38:15AM 5          THE COURT:  One at a time.

6          MR. RESNICK:  Judge, he plead guilty.  So we are

7  already at the verdict of the trial.  The jury has found him

8  guilty as the same as him pleading guilty.  So whatever -- his

9  guilty plea is admitting that he fits within the elements of

11:38:27AM 10  this crime.  Now that he's admitted to the elements of this

11  crime, we're showing that he's done this numerous time,

12  basically, the same way.  So therefore, circumstantially, all

13  of those other transactions -- all of these transaction fit

14  within the same pattern just like any scheme, just like any

11:38:44AM 15  scheme to defraud.  You know, you show it.  It's the same

16  pattern, restitution.  We are always arguing relevant conduct.

17  That is what we are doing here.  He plead guilty to it.  If

18  what you are saying is true, he should not have plead guilty

19  to it.  But his lawyers advised him, and he plead guilty.

11:39:02AM 20          THE COURT:  Maybe, I don't know.  Maybe, I mean,

21  maybe we should have plead down at the plea what transactions

22  he did.  Maybe the Government should have said, you know what,

23  Judge, ask him this.  What transactions, specifically, were

24  you here during the plea?  Mr. Xiang was anxious to get it

11:39:25AM 25  done.  And we had some discussions.  And I asked him is that

1    sufficient.  And he said yes.  So all he did was admit that

2    during that period of time -- I thought it was one

3    transaction, maybe he said more than one.

4              MR. RESNICK:  He said at least one, I think.

11:39:34AM 5          THE COURT:  At least one.  He could have said, your

6    Honor, we need -- and I distinctly remember asking Mr. Xiang

7    is that enough from the Government's point.

8              MR. LEMBKE:  I remember that too.

9              THE COURT:  Presuming he was comfortable with it.

11:39:48AM 10  It's a different issue now.  You are suggesting that because,

11   and I'm going back to it.  I am not saying you are right or

12   wrong.  But what your argument is is that any transaction

13   involving Bitcoins that he conducted during that time should

14   factor into the amount.  And I'm not sure you are right.  Now,

11:40:05AM 15  Mr. Lembke and Mr. Leonardo, I will give you a chance to make

16   an argument.  I understand the Government's position.

17             MR. LEMBKE:  Judge, you have articulated our

18   argument.  One thing that we do want to address, however, is

19   what was brought up about the fact that it seems as though

11:40:27AM 20  Mr. Leonardo and I have inconsistent positions in connection

21   with the loss amount.  I think that what his point -- you

22   explain it to him, Steve.

23             MR. LEONARDO:  Judge, if I may --

24             THE COURT:  I understand his point.  I think it is

11:40:45AM 25  time served.

1          MR. LEONARDO:  Judge, our positions are not

2   inconsistent.  I took what appeared to me to be the most

3   obvious.  There is a hand-to-hand sale of Bitcoin, and the

4   Government likes to emphasize the word business and that he

11:40:59AM 5   advertised his business.  The business is advertised.  But the

6   key and emphasis should be on money transmitting.  He was not

7   the money transmitter.  Whatever he sold Bitcoin for was what

8   a willing purchaser was going to pay.  And on many instances,

9   the one specifically I refer to in my sentencing memo, they

11:41:14AM 10   were a hand-to-hand sale.  The method by which he transferred

11   the Bitcoin is the only method by which it can transfer.  It's

12   virtual.  It doesn't exist.  It has to be transferred in the

13   way he transferred it.  It doesn't make what he did a money

14   transmitting business.  I don't see any dispute.  I don't

11:41:31AM 15   think there can be any sincere dispute that those hand-to-hand

16   sales could not constitute --

17          THE COURT:  Let me put you on the spot for a

18   second.

19          MR. LEONARDO:  Okay.

20          THE COURT:  Because Mr. Resnick raises a good

21   point.  Why did he plead guilty?  If he didn't -- I'm not

22   saying you have to answer that out loud.  It's more of a

23   rhetorical question.

24          MR. LEONARDO:  Thank you.

11:41:49AM 25          THE COURT:  But Mr. Resnick posted why did he plead

1  guilty if all he was doing was making money from selling

2  Bitcoins?  You knew the definition of -- presumably, you were

3  aware of the definition of a money transmitting business.  And

4  he said that on at least two -- if I take what you gave me now

11:42:08AM 5  and with a plea what you said is at least on one occasion he

6  transferred -- somebody came to him, asked him to transfer

7  Bitcoins to a third party, and that's when he did for a fee.

8        MR. LEMBKE:  Yes, that's why he pleaded guilty, but

9  that's why he did not plead guilty pursuant to an agreement.

11:42:36AM 10  Mr. Resnick points at an accusing finger at us saying well he

11  pleaded guilty and therefore you are in for a penny, you are

12  in for a pound.  Well when you plead guilty to an agreement,

13  part of the reason you plead guilty to an agreement is because

14  you want to contest certain aspects of the sentencing that you

11:42:59AM 15  would not otherwise be able to do with a plea agreement.  So

16  he pleaded guilty because he did on at least one occasion make

17  a transfer for a fee.  That's all he has admitted.  And that's

18  all that's required under the statute.  There is no minimum

19  amount.

11:43:17AM 20        THE COURT:  I'm just trying to remember because I

21  didn't have -- I don't recall.  And that's why I was trying to

22  get the plea.  I don't recall what he said.  Did he say on the

23  plea that he did, in fact, accept the fee and transfer money

24  to a third party?

11:43:32AM 25        MR. LEMBKE:  On at least one occasion.

1          THE COURT:  Right, but did he say that's what he

2     did?

3          MR. LEONARDO:  No, I think he said he operated a

4     money transmitting business on at least one occasion.

11:43:45AM 5          MR. LEMBKE:  With the understanding of what a money

6     transmitting --

7          THE COURT:  No.  And again, it's a shame that

8     Mr. Xiang didn't clarify that because at that time I didn't

9     have the definition of a money transmitting business because

11:44:00AM 10    we could have perhaps clarified a lot.  Again, I distinctly

11    remember asking Mr. Xiang is this good enough.  Is the

12    Government satisfied with this?  And he said yes.

13         MR. RESNICK:  But again, your Honor, that's just

14    the elements.  And the elements were covered by what

11:44:21AM 15    Mr. Lembke said and that's all that is required.  We were not

16    talking about relevant conduct at that time.

17         THE COURT:  There is no question.  But if the

18    relevant conduct, if in other exchanges in Bitcoins he was not

19    acting as a "money transmitter" because it didn't go to a

20    third party, then those amounts -- and that's precisely the

21    objection the Government is making --

22         MR. LEMBKE:  The defense.

23         THE COURT:  That those amounts -- excuse me -- the

24    defense is making that those amounts -- you can't identify out

11:44:49AM 25    of, for example, the Bank of America account.  And here is

1  another interesting thing, the Court did sign a preliminary

2  forfeiture order.

3          MR. RESNICK:  Yes, I was going to bring it up, your

4  Honor.  It was not contested.

11:45:05AM 5          THE COURT:  It wasn't contested.  Here is what's

6  interesting, Mr. Peterson found that in drug cases there is a

7  rebuttable consumption.  I'm looking at 21 USC Section 853

8  subsection D.  There is a rebuttable presumption at trial that

9  any property of a person convicted of a felony under this

11:45:31AM 10 subchapter is subject to forfeiture of this section if the

11 United States establishes by a preponderance of evidence that,

12 one, such property was acquired by such person during the

13 period of the violation of the subsection two or within a

14 reasonable time after such period, and two, there was no

11:45:47AM 15 likely source for such property other than the violation of

16 the subchapter.

17          Now, I mention that because there is a principle

18 called expressio communis exclusio alterius.  And essentially

19 it means that if it's stated in one place and not stated in

11:46:21AM 20 another, it means it was not intended by the legislature to be

21 included.  And a lot of the special agents' affidavit in

22 support -- and you're right.  It was not contested.  And I

23 don't know if I signed the final order, but it wasn't

24 contested.  And I know a lot of special agents affidavit goes

11:46:36AM 25 precisely to this, the timing of this.  And I'm wondering and

1   I was asking is there a section, a similar presumption, that

2   applies to situations like this?

3          MR. RESNICK:  I think, your sentencing relevant

4   conduct section.

11:46:57AM 5          THE COURT:  But do you understand what I'm saying?

6   There is a specific presumption that says okay if you came

7   into money during the time that you admitted to dealing drugs,

8   and there is really no source for the money other than you

9   can't show -- then it's forfeitable.  But I don't know if

11:47:14AM 10   there is a similar presumption that applies to this section.

11          MR. RESNICK:  But I think our preliminary order of

12   forfeiture that you signed goes beyond that.  And it even says

13   that the government has established between the property and

14   the offense committed was $189,000.

11:47:31AM 15          THE COURT:  Right.  And I signed it probably

16   because there was no objection.

17          MR. RESNICK:  But that -- I mean, again, that's

18   like a guilty plea.  It's like --

19          THE COURT:  You're right, Mr. Resnick, but I don't

11:47:42AM 20   know the effect of a criminal preliminary order.

21          MS. CARDUCCI:  Your Honor, yes, on that Section 21

22   USC 853 that does apply to all forfeiture actions.

23          THE COURT:  It does?

24          MS. CARDUCCI:  It does, yes.  It's applicable to

11:47:53AM 25   all forfeiture actions.  There is a section that makes it

1  applicable to all forfeiture under all statutes.  So that

2  presumption would apply in the case.

3          MR. LEMBKE:  Is there a final order?

4          MS. CARDUCCI:  No, the final order would get issued

11:48:10AM 5  after sentencing.

6          THE COURT:  Correct.  So could you just maybe,

7  Ms. Carducci, it would be helpful if you provided the Court

8  and counsel with that section.  And that raises the issue if

9  it's forfeitable and there is a guilty plea, does that lend --

11:48:28AM 10  does that aid the Government in their position?  So what Ms.

11  Carducci is saying is there is this rebuttable presumption.

12          MR. LEMBKE:  I understand.

13          MR. LEONARDO:  If the defendant challenged this

14  point -- if the defendant, for whatever reason, chose not to

11:48:40AM 15  challenge the forfeiture --

16          THE COURT:  It does not say that.

17          MR. LEMBKE:  No, it's --

18          THE COURT:  Here is what it says.  It says that any

19  person convicted of a violation of the subchapter, blah, blah,

11:48:58AM 20  blah, any property constituting or derived from any proceeds

21  the person obtained directly or indirectly as a result of such

22  violation.  So the argument that I assume the Government would

23  make and it kind of juxtaposing Mr. Resnick is saying is this:

24  That since he plead guilty, if this rebuttable presumption

11:49:21AM 25  applies, then the presumption -- the rebuttable presumption --

1  again, I am just going off on comparable cases maybe it's

2  sufficient at the end of the day unless it's rebutted.

3          MR. LEMBKE:  Unless we object to it.

4          THE COURT:  Well, I don't know if objecting to it

11:49:42AM 5  is the same as -- I don't know the answer.  Is that the same

6  as rebutting it?  I mean, it's a rebuttable presumption.  As a

7  matter of fact, if you are saying well this shouldn't apply,

8  I'm not sure I know the answer to that.

9          MR. LEMBKE:  Yes, you're right.  It's two different

11:49:59AM 10 burdens.  Their burden here in terms of sentencing is to

11 establish by a preponderance of evidence to relevant conduct.

12 Our burden according to that would to bring forth evidence to

13 rebut a presumption.

14         THE COURT:  No, their burden -- so the argument

11:50:14AM 15 that kind of Mr. Resnick has made and Mr. Xiang has made is

16 this:  That it is their burden to show the property they seek

17 to forfeit is the proceeds of criminal conduct by a

18 preponderance of the evidence.  That's the verdict.

19         MR. LEMBKE:  Yes.

11:50:31AM 20         THE COURT:  Okay.  And they are suggesting that

21 there has been no objection to the forfeiture of the money.

22 No objection was filed.

23         MR. LEMBKE:  Yes.

24         THE COURT:  So based on the fact that no objection

11:50:44AM 25 was filed, I -- and again, I don't know effective or the

1   preliminary order of the forfeiture is, but they are saying at

2   least preliminarily I found by a preponderance of evidence

3   that the money of $189,000 they are seeking to forfeit was the

4   proceeds of the crime to which the defendant did the crime.

11:51:06AM 5   That's their argument.

6             MR. RESNICK:  And I would just add that --

7             MR. LEMBKE:  I understand.

8             MR. RESNICK:  -- if you are an investor of this

9   doing this legally and properly, you could say give me my

11:51:14AM 10   money back.

11            MR. LEMBKE:  You don't know that we are not going

12   to say that.

13            MR. RESNICK:  I'm just saying --

14            THE COURT:  Listen.  Let's all step back a second.

11:51:22AM 15   This is not a simple case.  In retrospect, I'm sure the

16   Government would have done things differently and clarified

17   some issues, but it is what it is now.  So I'm just trying to

18   clarify -- I think I have a good handle on the defense

19   arguments.  I've clarified it.  Again, if Ms. Carducci is

11:51:42AM 20   correct --

21            MS. CARDUCCI:  I have the section for you, your

22   Honor.

23            THE COURT:  What is it?

24            MS. CARDUCCI:  It's 18 USC Section 982(8)(b).

11:51:49AM 25            THE COURT:  18 USC Section --

1           MS. CARDUCCI:  982(8) subsection B and that

2     basically says that any forfeiture under the provisions of 982

3     incorporates 853.  So the presumption you were citing under 21

4     --

11:52:08AM 5           THE COURT:  So what you are saying is any criminal

6     forfeiture under any criminal case incorporates this

7     presumption?

8           MS. CARDUCCI:  Yes, but particularly the forfeiture

9     in this case was under Title 18 USC 982, and there is a

11:52:23AM 10    provision under 982 that indicates that the provisions of 21

11    USC 853 applied forfeitures under 982.  So that presumption

12    would be applicable in this matter.

13          THE COURT:  So again, I don't know -- again, I

14    don't recall Mr. Xiang -- I know Bitcoins were going for

11:52:46AM 15    $3,400 a piece at the time.  I don't know if the Government in

16    their submission has established -- I think you can recall in

17    your submission Special Agent Breckler, did you point out that

18    the defendant had no other sources of income?

19          SPECIAL AGENT BRECKLER:  In my affidavit, your

11:53:01AM 20    Honor, I would have to reread my affidavit.

21          MR. RESNICK:  Your Honor, he did file a probation

22    report every month saying he had no income.  He was working

23    for his father for very little money not $189,000 worth.  I

24    can show you the probation reports where he signed under

11:53:17AM 25    penalty of perjury.

1          THE COURT:  No.  Let's assume that's correct, Mr.

2     Lembke.  So here is the Government's counter-position.

3          MR. LEMBKE:  Yes.

4          THE COURT:  The Government's counter-position is if

11:53:27AM 5  you find -- and I will make it as simple as I can.

6          MR. LEMBKE:  Yes.

7          THE COURT:  If you find by a preponderance of

8     evidence that $189,000 is forfeitable because it's the

9     proceeds of the crime, that is tantamount to finding that

11:53:42AM 10  $189,000 should be attributable as relevant conduct to

11    Mr. Petix by a preponderance of evidence.  I am not saying

12    they are right or wrong.  I don't know the answer to that.

13    But here is what I'm going to do, in the event -- if, for

14    example, I were to back out the hand-to-hand -- I'm not saying

11:54:02AM 15  I would -- but if I were to back out the hand-to-hand sales as

16    Mr. Leonardo correctly points out, then the guidelines -- the

17    top end of the guidelines would be 24 months; right?  Isn't

18    that what you calculated?

19          MR. LEONARDO:  At that level, Judge, it may be

11:54:20AM 20  lower than that.  It would be no more than that.

21          THE COURT:  Let me go back to this because there is

22    another issue that I have.  And let me try to identify this

23    because some things are not issues.  To the extent, for

24    example, Mr. Lembke, I decide that any of your comments about

11:54:35AM 25  you shouldn't include this description of the dark web.  I

1    don't have to strike that.  I can just say it's not going to

2    effect me in sentencing.  It's not going to.  The other big

3    issue is the two point -- and the argument that the Government

4    really has on this two point enhancement, I think, Mr. Spogen

11:55:10AM 5    distinctly sets forth in --

6             MR. SPOGEN:  Paragraph 54, your Honor.

7             THE COURT:  Yes.  I mean in addition, this is the

8    compelling thing.  In addition, CD-1 purchased approximately

9    199 Bitcoins with an approximate value of $56,360 from Petix.

11:55:36AM 10   In addition, the Government advised that on September 7th CD-1

11   sent a message to the defendant which read I stopped selling

12   coin to the public because I didn't want any trouble from the

13   state IRS.  I wouldn't risk it with New York State.  Okay.

14   Then it goes on to say that despite knowing this that the

11:56:02AM 15   customer's Bitcoin activity entailed trouble with the state

16   and federal authorities, the defendant conducted five more

17   transactions totaling approximately $75,000.  And I say so

18   what.  So what if I'm the buyer and I say I am going to stop

19   doing these because it might get me in trouble and I say, eh,

11:56:27AM 20   I want to do some more.  How is that attributable to Mr.

21   Petix?  How does that in any help that he knew the guy was

22   committing criminal activity?  I think I put the Government --

23   and again, Mr. Resnick, help me out if I'm remembering this

24   wrong.  I think I asked Mr. Xiang, you know, you threw in your

11:56:46AM 25   papers that he sold to somebody that bought marijuana who

1  obviously the Government is working with, it would be easy.

2  Have me say that guy said I'm going to use the Bitcoins to buy

3  marijuana, or I'm going to use the Bitcoins to engage in

4  illegal activity, but there is no evidence of that.

11:57:06AM 5       SPECIAL AGENT BRECKLER:  Your Honor, if I can speak

6  to CD-2 who we are talking about the marijuana.  CD-2, in my

7  conversations with CD-2 and recently and throughout the entire

8  time with CD-2, when he brought up what he was going to buy

9  with the Bitcoins, Mr. Petix said I don't want to know.  I

11:57:24AM 10  don't want to get in trouble is what CD-2's statement was.  So

11  because it is a cash for currency transaction, a money meet is

12  what it is, Mr. Petix was insulating himself.  He knew what

13  CD-2 was going to do.  And when he stopped --

14       THE COURT:  Okay.  That's a sell.  I mean, it would

11:57:47AM 15  be easy if he said -- you said CD-2 wanted to tell him what he

16  was going to do.  Did he tell him?

17       SPECIAL AGENT BRECKLER:  He never -- he stopped

18  him.

19       THE COURT:  How could he stop him?

11:57:56AM 20       SPECIAL AGENT BRECKLER:  Mr. Petix stopped him

21  because he didn't want -- because they were doing business.

22       THE COURT:  You understand none of this is in the

23  PSR, but even if it was -- so I'm the purchaser of the

24  Bitcoins, and I say I want to use them for, and Mr. Petix says

11:58:12AM 25  don't tell me.

1          MR. RESNICK:  Your Honor, that's one argument.

2    There is another argument if you look on our response which

3    was -- our first response on July 30th, 2017, there is a

4    footnote there.  And it basically said the evidence shows that

11:58:29AM 5    the defendant knowingly used Tor in his unlicensed money

6    transacting business.  In a text message he kind of referenced

7    this to CD-1 that they are using Tor.  Now, Tor is used, I

8    believe, in the darknet.

9          Now the darknet is underneath the regular net and

11:58:48AM 10    that's where people buy drugs, CP, all kinds of illegal

11    activity.  He is using an operating system that gets him into

12    the darknet.  I don't know if I'm explaining it right and

13    maybe the agent can explain it.

14          THE COURT:  Well, I guess the question kind of

11:59:06AM 15    becomes then and maybe this is an issue on -- where is the

16    footnote?  I'm sorry, Mr. Resnick.  Can you just direct me,

17    please?

18          MR. RESNICK:  It's on the first filing by the

19    Government by July 30th, 2017.

11:59:15AM 20          THE COURT:  What page?

21          MR. RESNICK:  Page six.  And again, remember, I

22    mean, I know you are saying it's not in the PSR, but again, we

23    were not objecting to the PSR because the probation department

24    found it on a different basis.  So that's fine with us as long

11:59:31AM 25    as there is a basis for it.  They objected.  Now we responded

1    to their objection.

2            THE COURT:  The defendant objects to claiming there

3    is no evidence that he was accessing the darknet or using the

4    Tor browser.  To the contrary, the evidence shows that the

11:59:40AM 5    defendant knowingly used Tor in his unlicensed transmitting

6    business.  The text message on August 26th, 2014, to CD-1

7    about technically only using Tor circumventing New York

8    State's bit license for regulatory scheme.  The defendant

9    wrote it won't be hard to set-up a Bitcoin wallet entails so

12:00:04PM10   it automatically connects to Tor and never goes to NYS.  When

11   he transferred 37 Bitcoins to the undercover agent on

12   December 3rd, 2015, the defendant followed his own advise.  He

13   used a Bitcoin wallet stored on the thumb drive using the

14   tails operating system thereby automatically connecting via

12:00:32PM15   Tor.  And that footnote tells me that all you can buy on the

16   darknet is illegal stuff?

17           SPECIAL AGENT BRECKLER:  No, the Government is not

18   saying that, your Honor.

19           THE COURT:  That's what the Government just said.

12:00:47PM20   MR. RESNICK:  I said there is illegal stuff in it,

21   and I would say a lot, probably the majority, because there is

22   no reason to be on the darknet if you are doing legitimate

23   business.

24           THE COURT:  Well, somebody must be on the dark net

12:01:02PM25   doing legitimate business.

1          MR. RESNICK:  Well, then the defendant must be.

2          SPECIAL AGENT BRECKLER:  Your Honor, I mean, the

3 darknet is a whole different discussion.

4          THE COURT:  The dark net and the deep web are the

12:01:11PM 5 same thing?

6          SPECIAL AGENT BRECKLER:  No, they are not, your

7 Honor.  So the internet is broken down into the index web and

8 the unindex web.  The unindex web is the deep web.

9          THE COURT:  The index web is what Mr. Resnick and I

12:01:21PM10 go on; right?

11          SPECIAL AGENT BRECKLER:  Exactly, but when you say

12 you are here at your office, and you are on your DOJ computer,

13 and you are entering your internet web, interweb, that's

14 actually the deep web.  That's a portion that's unindexed

12:01:34PM15 because I can't at my house access your DOJ e-mail.  You can't

16 access your e-mail at your house.

17          THE COURT:  Right.  Yes.

18          SPECIAL AGENT BRECKLER:  So that's technically the

19 deep web.  Now within the deep web, there is a section called

12:01:51PM20 the dark web marketplaces and hidden services.  And it's

21 through these hidden services that we talk about these darknet

22 marketplaces which is throughout the affidavits where the

23 majority if not -- I don't want to say all of the business, 99

24 percent of the business is illegal on these darknet

12:02:09PM25 marketplaces.  In order to access these darknet marketplaces,

1    you need a -- you need to access them using a dot onion

2    website instead of a dot com site.  Tor is one of the most

3    commonly used devices.  So instead of using Google Chrome or

4    Internet Explorer, you click on the little button that's

12:02:30PM 5    called Tor.

6                    THE COURT:  Where do you find Tor?

7                    SPECIAL AGENT BRECKLER:  Actually, the Department

8    of Navy started it.

9                    THE COURT:  No, but I mean have you ever seen Tor

12:02:37PM10    on your --

11                    SPECIAL AGENT BRECKLER:  You have to go on Google.

12                    THE COURT:  Is it an app you download?

13                    SPECIAL AGENT BRECKLER:  Literally, it's an app.

14    It has become so advance there are apps for your smartphone.

12:02:48PM15                    THE COURT:  So if I go to the app store, I can

16    download Tor?

17                    SPECIAL AGENT BRECKLER:  If you go to the app store

18    on your phone, you would most likely download an Orbot for

19    your phone.  If you go on your computer, you would just go on

12:03:04PM20    Google and you would type in Tor.  It will take you to the Tor

21    Project.  And then you just click.  If you had the admin.

22    rights to your computer, you can install Tor.

23                    MR. RESNICK:  Then it becomes a program on your

24    computer.  So you have to download it on your computer.

12:03:15PM25                    THE COURT:  No, I get that like Safari.

42

SPECIAL AGENT BRECKLER:  Yes.  So what that does
and what the defendant is saying here is he is walking CD-1
through, hey, I understand New York State has come up with
this Bit license that a majority of this community was acting
as money service businesses on the surface web got scared
about.  With this, he walks him through here is how you show
your IP address so you are no longer in New York State.  You
are in some foreign country or outside of New York State by
accessing Tor when you are going through your transactions.
Because what Local Bitcoins did is if you were posting an ad
acting as money services to sell your Bitcoins for a fee on
that website, they stopped letting people in New York State do
that if your IP address came back to New York State.

MR. RESNICK:  And he is advertising it.  So I guess
our argument is saying using Tor software gets you to the dark
web, and he knows people are using Tor.  He is telling people
to use Tor, and that's where you buy illegal products.

SPECIAL AGENT BRECKLER:  Additionally, your Honor,
through the December 3rd transaction with the undercover
agent, when I did an analysis of the Bitcoin addresses that
came from Mr. Petix to our undercover agent, compliance
software used by the industry, the Coinbase company that we
talked about previously, shows that the majority of those 37
Bitcoins or roughly $13,000 came directly from these darknet
places.

1          MS. CARDUCCI:  Your Honor, may I just put something

2   on the record?  I want to make it clear.  Is that okay?

3          THE COURT:  Of course.

4          MS. CARDUCCI:  Join the party; right?

12:04:58PM 5          THE COURT:  Yes.  Sure.

6          MS. CARDUCCI:  With regard to our motion for

7   preliminary order of forfeiture, we did set out that the total

8   value involved in the defendant's illegal unlicensed money

9   transmitting business was $189,000.  The defense never

12:05:15PM 10  objected to that amount and that's why you did enter the

11  preliminary order forfeiture after 14 days because they never

12  filed an objection.  So I just want to make that clear.

13         THE COURT:  All right, which takes us to a point --

14         MR. RESNICK:  Your Honor, I will also mention in

12:05:30PM 15  the plea agreement in the indictment that he plead guilty to

16  we have the forfeiture allegations.

17         THE COURT:  Not the amount.

18         MS. CARDUCCI:  Not the amount, but our motion we

19  did set forth the amount and attach the agent's affidavit and

12:05:43PM 20  how we came up with that amount.

21         THE COURT:  So what is your position?  Is that some

22  type of judicial omission on the defendant's part?  If he

23  didn't object -- so read the language again.

24         MS. CARDUCCI:  Your Honor, we set forth in the

12:05:54PM 25  preliminary order forfeiture that $189,862.96 was the total

1  value of Bitcoins transmitted by the defendant.

2          THE COURT:  That are forfeitable.

3          MS. CARDUCCI:  Yes, your Honor.

4          THE COURT:  And explain to me how you forfeiture.

12:06:12PM 5  Did you serve a copy of that on the defendant?

6          MS. CARDUCCI:  Yes, your Honor.  We e-filed it just

7  like we do with all of our motions.  Defense counsel received

8  a copy of that.  They had 14 days to respond.  They did not

9  file an objection.  So after that 14 days had passed, we

12:06:27PM 10 submitted the preliminary order of forfeiture to your Honor

11 and you signed that.  And that was obviously e-filed, and

12 defense counsel had knowledge of that.

13         THE COURT:  Here is the issue I want addressed, and

14 maybe you are right, is that in effect a judicial admission on

12:06:43PM 15 the defendant's part that that amount of money was

16 forfeitable?  If it was, then it would be case closed because

17 if you are saying that amount is forfeitable, it is only

18 forfeitable if it's the proceeds of illegal activity.

19         MS. CARDUCCI:  I would say yes, your Honor, because

12:07:01PM 20 they didn't object to it.

21         THE COURT:  I understand your position.  I'm just

22 looking for some law that supports that.  So here is what I am

23 going to do now.  Even if I were to hold Mr. -- and I'm

24 looking at my guidelines.  It's undisputed that his criminal

12:07:17PM 25 history category is three.  If he -- if I declined, as

1 | Mr. Leonardo urges to, even though it's an additional two
2 | points relating to those transactions involving informants,
3 | his offense level would be 14; correct?
4 |       MR. LEONARDO:  Correct.
12:07:42PM 5 |       THE COURT:  If I -- even if I gave him the two
6 | points for having some knowledge that would be engaging in
7 | criminal activity, that would raise him to a 16, but then
8 | lower it again to a 14 because he gets two points acceptance.
9 |       MR. RESNICK:  I don't believe so.
10 |       THE COURT:  Why?
11 |       MR. RESNICK:  He is not accepting responsibility at
12 | all for the crime.
13 |       THE COURT:  No, that's not true.
14 |       MR. RESNICK:  Well, I mean, they are saying there
12:08:12PM 15 | is no loss here.  There is no transactions.
16 |       THE COURT:  Well, that's another issue, but I
17 | can't -- the PSI recommends reduction for the sentence.
18 |       MR. RESNICK:  That was before the objections were
19 | filed.
12:08:26PM 20 |       THE COURT:  Well, his objections are to the --
21 | typically, you're right, Mr. Resnick.  Objections -- and
22 | that's another thing that you can address.  I will give you a
23 | chance to do that because what Mr. Resnick is referring to,
24 | Mr. Lembke, is the acceptance has to extend to relevant
12:08:44PM 25 | conduct.  And if it doesn't extend -- I think it says if he

```
 1  falsely or something denies relevant conduct, that can be a
 2  basis for denying acceptance.  I am just pointing out if
 3  Mr. Leonardo is correct, then the range that he would be
 4  looking at is 21 to 27 months.  The most he can get on a
12:09:04PM 5  violation of probation is 10 months under the guidelines.
 6            MR. RESNICK:  Yes.
 7            MR. LEMBKE:  Under the guidelines.
 8            THE COURT:  That's 37 months.  What's 85 percent of
 9  37 months?
12:09:16PM10            MR. LEMBKE:  I have it.
11            THE COURT:  It's only --
12            MR. LEMBKE:  31.3 months.
13            THE COURT:  31.3.  If they win their objection
14  on -- I'm not saying they will -- but if they win their
12:09:32PM15  objection and it goes down two points because I don't apply
16  it, then we are getting to a point where he can be in for time
17  served.  So what I'm going to do is --
18            MR. RESNICK:  It's 27 plus the 10 which you are
19  saying is 37 months.  That would be the high end of the
12:09:48PM20  guideline range.
21            THE COURT:  That would be the total high end of the
22  guideline assuming --
23            MR. RESNICK:  Then he would have 31 months.  I'm
24  sure he is getting good time.  So why don't we sentence him
12:10:00PM25  right now, 37 months.
```

                         1          MR. LEONARDO:  No, 31.

                         2          MR. RESNICK:  Well, you know, 37.  He gets the --

                         3  you'll get the 31.  He has been in for how long?

                         4          MR. SPOGEN:  Almost 22, 21 months 12 days.

12:10:20PM  5          THE COURT:  I mean if you want if everyone agrees,

                         6  I will sentence him to time served.

                         7          MR. LEONARDO:  We agree.

                         8          MR. RESNICK:  No, we do not agree to time served.

                         9          THE COURT:  All right.  Then what I'm going to do

12:10:23PM 10  is we can flush out these issues.  I'm going to release

                        11  Mr. Petix under the same conditions that he was released on.

                        12          Here is what I want to address.  And I think it

                        13  will legitimately deal with some issues.  Ms. Carducci is

                        14  suggesting -- what Ms. Carducci is suggesting, Mr. Lembke and

12:10:48PM 15  Mr. Leonardo, just so we are clear, is the fact that he did

                        16  not object despite giving notice to the amount sought to be

                        17  forfeited is in effect an admission that $189,000 is the

                        18  amount involved in relevant conduct.  That is issue number

                        19  one.  Okay?  So I'd like -- and we will set a schedule.  Some

12:11:18PM 20  may be right, some may be wrong.  I'm not sure.

                        21          Second issue, Mr. Resnick is suggesting that by

                        22  contesting the amount -- and $189,000 would get him to the 12

                        23  point increase; is that right?

                        24          MR. SPOGEN:  Ten point, your Honor, yes.

12:11:39PM 25          THE COURT:  Would get him to the maximum --

48

1          MR. SPOGEN:  Anything over 150, your Honor.

2          THE COURT:  Would get him to the 10 point increase.

3  Okay.  Mr. Resnick is suggesting that I should deny him.

4  What's the acceptance section?

12:11:54PM 5          MR. SPOGEN:  3E1.19(a), Judge.

6          THE COURT:  All right.  Let's take a look at 3E.

7          MR. RESNICK:  It is under application notes 1A.

8          THE COURT:  Thank you, Mr. Resnick.  It says, "in

9  determining whether a defendant qualifies under subsection A,

12:12:21PM 10  appropriate consideration should include but are not limited

11  to the following:  Truthfully submitting the conduct comprised

12  in the offense of conviction and truthfully admitted,

13  admitting, or not falsely denying any additional relevant

14  conduct in which the defendant is accountable."  So the

12:12:39PM 15  argument is that he is accountable for that amount.  I'm not

16  saying it's right.  He is falsely denying it.  Now, again,

17  just a suggestion of avoiding further litigation, if you were

18  to get the top end of each guideline, Mr. Resnick, we are

19  talking about the total of 37 months.  Assuming --

12:13:06PM 20          MR. RESNICK:  No, that's with the two point

21  reduction.

22          THE COURT:  The two point reduction.  Let's look at

23  what his ultimate exposure would be.  So if he withdrew, for

24  example, any objections to the amount, his offense level would

12:13:27PM 25  be 16, correct, Mr. Spogen, 6 and 10?

1           MR. SPOGEN:  Correct.

2           THE COURT:  He would get the two level increase for

3  knowing it was incorrect and then go back down to 16.

4           MR. SPOGEN:  Correct.

12:13:47PM 5     THE COURT:  So that would be 27.  And tell me if I

6  am wrong, Mr. Spogen.  That would be 27 to 30 months.

7           MR. RESNICK:  Thirty-three.

8           MR. SPOGEN:  Thirty-three, what was in the original

9  presentence report.

12:14:01PM 10     THE COURT:  If he got the top -- I'm not saying he

11  is going to get it -- but if he got the top end of the

12  recommended guidelines on the violation and there is a

13  recommendation that it be run consecutive, I wouldn't sentence

14  him consecutively.  I wouldn't exercise my discretion at

12:14:19PM 15  sentencing to sentence him consecutively on the crime because

16  it is the same conduct.

17           We have the other issue that he didn't -- that we

18  may have to litigate.  That's another consideration.  We may

19  have to litigate the issue.  Remember one of the violations

12:14:31PM 20  stems from the fact that he would not provide probation, as

21  required, with the passwords for these thumb drives, but he is

22  taking -- at least counsel is taking the position that they

23  were not his thumb drives.  They were his girlfriend's.  So we

24  may have to litigate that issue.  So let's assume after the

12:14:50PM 25  litigation I decide to sentence him consecutively, and we are

1    looking at the total, I applied the high end of the guidelines

2    of 43 months; right?  So what's 85 percent of 43?  Is it

3    something like 34 months?  Can you do it, Mr. Lembke.

4                 MR. LEMBKE:  Of 43?

12:15:27PM 5            THE COURT:  Eighty-five percent of 43, is it 34?

6                 MR. LEONARDO:  Thirty-five, thirty-six months.

7                 THE COURT:  So 46.

8                 MR. LEONARDO:  Thirty-six.

9                 THE COURT:  Thirty-six.  So he has 22 in.  I mean,

12:15:41PM10   certainly, if Counsel were to agree to some thing in the

11   mid-range and avoid any litigation -- I'm not saying you

12   should or shouldn't -- but the Court would probably be

13   receptive.  In other words, we are going to adjourn this.  And

14   I'm pointing out, Mr. Resnick, I'm not making any promises on

12:16:02PM15   sentencing.  I could give him top end.  I could give him more

16   or less.

17                 MR. RESNICK:  Yes, I think there is grounds of

18   departure upward because of the fact that you gave him a break

19   on sentencing.

12:16:13PM20            THE COURT:  Right, but I have to give notice of

21   that before I do that and I haven't given any notice.

22                 All I'm saying is if counsel want to meet and come

23   up with some suggestion to avoid further litigation, it might

24   involve slightly more time on Mr. Petix's part, but because

12:16:40PM25   you haven't been sentenced, that could be done locally.  And

1    it might obviate the necessity of hearings.  I am not

2    suggesting you do that, but the Court is always receptive to

3    conversations between counsel.

4           But absent that, I'm going to issue a scheduling

12:17:00PM 5    order.  And we are going to address -- and the big issue is

6    the one Ms. Carducci was kind enough to bring up.  And that is

7    the fact that in the preliminary order of forfeiture without

8    objection, I found there a preponderance of evidence for

9    the $189,000 was a forfeitable amount.  Does that foreclose

12:17:32PM10   the defendant from now arguing a lesser amount?  And if he

11   does, does that impact his ability that he continues to

12   persist?  Does that impact his ability at sentence?  So how

13   long?  They can be letter memos.

14          And Mr. Resnick, and I certainly invite, you know,

12:17:57PM15   the Government if they are disputing the definition of the

16   Second Circuit of money transmitting business that regardless

17   of when it is conducted you have to have some evidence that

18   the transactions involve sending Bitcoins to a third party.

19   Or again, Ms. Carducci's suggestion since that presumption

12:18:24PM20   applies, does it somehow carry over to the sentencing.  The

21   rebuttable presumption that these monies are the proceeds of

22   the crime.  And that would be sufficient to carry the day to

23   show this is the amount.  Let's face it.  That's the amount.

24          So Counsel, since I'm going to let Mr. Petix out --

12:18:44PM25   and let me tell you something clearly.  Okay?  I'm letting you

1    out, and I will tell you why because I'm not sure of exactly

2    what the law is.  And it is at least possible -- and I don't

3    want you to do more time than you would otherwise have to do

4    on these issues.  So I'm just trying to be fair to you.  But

12:19:03PM 5    if you screw up on supervised release again, then you will be

6    back in.  And I'm telling you -- although, Mr. Spogen, you

7    won't be around because you are bailing on all of us next week

8    -- Ms. Hernandez will be here.  When you are released, which

9    facility are you at?

12:19:27PM 10          THE DEFENDANT:  I'm at Monroe County Jail right

11   now.

12          THE COURT:  So you will probably be released today.

13   Give me a time that he will be released.  Will he be released

14   around 3:00?

12:19:36PM 15          MR. LEONARDO:  Probably around there, Judge.

16          THE COURT:  All right.  I want you to report here

17   tomorrow morning to Mr. Hernandez and go over the conditions

18   of release.  You know what they are.  I'm tell you, if you

19   violate any condition of release, then a warrant.

12:19:59PM 20          And doing that I'm considering too what Mr.

21   Leonardo and what Mr. Lembke brought out in the presentence

22   report that unlike many of the individuals who stand convicted

23   of child pornography, and it has been determined you are not a

24   petaphile.  There are still issues that remain that I don't

12:20:25PM 25   know what the Government is looking into.  It is hard for me

1  to believe that -- what's the thing that Apple refused to

2  provide information on something and the Government can't get

3  into it -- and we can't get into these.

4             MR. RESNICK:  We are going to resubmit them, Judge.

12:20:34PM 5             THE COURT:  So that is one issue out there because

6  no commitment has been made concerning what's on those flash

7  drives if anything.

8             And the other thing is I don't know if the

9  Government is looking at -- I mean, Mr. Petix had a lot of

12:20:56PM 10  Bitcoins.  The Bitcoins were going for $3,400.  In any event,

11  we will adjourn until -- how long do you need, Counsel, I know

12  you are going to want to turn this over to Mr. Xiang,

13  Mr. Resnick, and Ms. Carducci, I think.

14             MR. RESNICK:  You may not want him back.

12:21:20PM 15             THE COURT:  You are the supervisor.  That is one of

16  the privileges of rank, you can delegate.  So how about

17  30 days?

18             MR. RESNICK:  Simultaneous filings?

19             THE COURT:  Simultaneous filings within 30 days.

12:21:35PM 20  And then once I get the filings, I will schedule it.  Does

21  that give you enough time, Mr. Leonardo and Mr. Lembke?

22             MR. LEONARDO:  Are you good with that?

23             MR. LEMBKE:  Depends on -- oh, to file.

24             THE COURT:  To file and give an update.  And please

12:21:46PM 25  a joint statement between counsel.

1          MR. LEONARDO:  I understand.  Thank you, your

2   Honor.

3          THE DEFENDANT:  Thank you very much, your Honor.

4          THE COURT:  So I don't lose track of it.  Let's put

12:22:04PM 5   it on for a sentencing date after 30 days.  Give me a week

6   after the 30 days.  So we are going to put it on for a

7   sentencing date.  You have 30 days.  Hang on, Mr. Resnick.

8   Let's make sure the sentencing date works.  So 30 days takes

9   us to what, Kathy, October 13th?

12:22:26PM 10          THE CLERK:  Today is the 13th.  A week after, so

11   that takes us to the 20th of October.  We are on trial.

12          THE COURT:  Let's go to the next week.  What's the

13   trial the next week?

14          THE CLERK:  A prisoner trial.

12:22:42PM 15          MR. LEMBKE:  I'm in the trial that week.

16          MR. LEONARDO:  What's the week?

17          MR. LEMBKE:  October 23rd through Halloween.

18          THE CLERK:  So November 1st?

19          MR. LEMBKE:  I'm good on the first.

12:23:00PM 20          THE COURT:  Okay.  Put it on the first.

21          MR. LEONARDO:  That's for sentencing, your Honor?

22          THE COURT:  November 1st for sentencing.  Again,

23   you better make Ms. Hernandez happy.  Okay?

24          THE DEFENDANT:  Yes, your Honor.  Thank you.

12:23:15PM 25          MR. LEONARDO:  Thank you.

1          (Whereupon, the proceeding concludes at 12:23 p.m.)

2

3                    *    *    *

4

5                    REPORTER CERTIFICATE

6     I, Briana L. Jeffords, do hereby certify that I did report

7 in stenotype machine shorthand the proceedings held in the

8 above-entitled matter.

9

10          *Briana L. Jeffords*
            BRIANA L. JEFFORDS
11          Freelance Court Reporter and
            Notary Public No.  01JE6325111
12          in and for Genesee County, New York

13

14

15

16

17

18

19

20

21

22

23

24

25