IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NEW YORK

ROCHESTER DIVISION

-----------------------------------

THE UNITED STATES OF AMERICA,

-versus- DOCKET NOS: 15-CR-227

06-CR-6007

RICHARD PETIX,

Defendant.

-----------------------------------

TRANSCRIPT OF SENTENCING

BEFORE THE HONORABLE CHARLES J. SIRAGUSA

UNITED STATES DISTRICT JUDGE

WEDNESDAY, NOVEMBER 1, 2017

A p p e a r a n c e s:

On Behalf of the Government:

Wei Xiang, Assistant US Attorney
Grace Carducci, Assistant US Attorney

On Behalf of the Defendant:

Mathew Lembke, Esq. and Stephen Leonardo, Esq.

On Behalf of the Probation Department:

Ms. Rider, Ivette Hernandez, and Mr. Smith

R e p o r t e d B y:

Briana L. Jeffords

THE COURT: For the record, this is the matter of the *United States versus Richard Petix*.

You are Richard Petix?

THE DEFENDANT: Yes, your Honor.

09:05:33AM THE COURT: Mr. Petix, you are appearing with your attorneys Mr. Lembke and Mr. Leonardo; is that correct?

THE DEFENDANT: Yes, your Honor.

THE COURT; Mr. Xiang is here on behalf of the Government assisted by Ms. Carducci.

09:05:48AM MR. XIANG: Good morning, your Honor.

MS. CARDUCCI: Good morning, your Honor.

MR. LEONARDO: Good morning.

THE COURT: Ms. Fish is here on behalf of the probation department filling in now that Mr. Spogen is 09:05:59AM retired. Ms. Hernandez and Mr. Smith are here with respect to the violation of supervised release.

So we have two issues. First, we have the matter of the sentencing on the new indictment to which Mr. Petix pled. Then we have the issue of the supervised release 09:06:23AM violation.

With respect to the new charges to which Mr. Petix pled on the new indictment, the Court has received and reviewed the following: The revised presentence investigation report dated August 3rd, 2017, the statement of the Government 09:07:04AM with respect to sentencing factors dated July 17, 2017, the

Government's response to the defendant's objections to the PSR dated July 30th, 2017, the Government's response to the defendant's amended objections to the PSR dated August 28th, 2017, and the letter memo most recently submitted by the Government dated October 13th, 2017.

09:07:32AM

I also have received and reviewed the following from the defense: Petix's statement with respect to sentencing factors and objections to the PSR submitted by Mr. Lembke dated July 28th, 2017, Petix's amended and supplemental statement with respect to sentencing factors and objections to the PSR dated August 18th, 2017, submitted by Mr. Lembke, statement of the defendant with respect to sentencing factors dated August 31st, 2017, submitted by Mr. Leonardo, and Petix's memorandum concerning rebuttable presumption forfeiture impact on sentencing dated October 14, 2017.

09:07:57AM 09:08:21AM

I have also received certain, what I will refer to as, character letters on behalf of Mr. Petix, an undated letter from his fiance Brittany DeNight, an undated letter from his father Louis Petix, and an undated letter from his brother Christopher Petix, and most recently a letter from your mother dated October 20th, 2017, from your mother Debra Petix.

09:08:48AM

For purposes of the record, Mr. Xiang, has the Government received the revised presentence investigation

09:09:18AM

report and other submissions to which I have referred?

MR. XIANG: Yes, your Honor.

THE COURT: Mr. Lembke and Mr. Leonardo, have you received the revised presentence investigation report?

09:09:33AM MR. LEONARDO: Yes, your Honor.

MR. LEMBKE: Yes, your Honor.

THE COURT: Have you gone over it with Mr. Petix?

MR. LEMBKE: Yes.

THE COURT: Mr. Petix, did you read it yourself?

09:09:40AM THE DEFENDANT: Yes, your Honor.

THE COURT: Have you discussed it with your lawyers?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, let's get up to speed. The last 09:09:45AM time we were in court I addressed, if memory serves me correctly, the objections contained in what was captioned the amended and supplemental statement with respect to sentencing factors dated August 28, 2017.

In that regard I determined that apart from the 09:10:13AM objections that Mr. Lembke raised that were addressed by probation that, with a couple of exceptions, the other objections were in no way going to impact sentencing in any way. And therefore, the Court didn't need to specifically rule on them. But the two real ones that we addressed -- we 09:10:43AM started to address were those referenced in the presentence

investigation report in paragraph 54. And that is pursuant to 2S1.3(b)(1) that the defendant knew or believed the funds were proceeds of unlawful activity.

09:11:16AM I indicated at the time, if my memory serves me correctly, that I did not believe the Government established that by a preponderance of evidence. We discussed that at length. So I'm declining to apply that enhancement. In other words, Mr. Xiang, I am sustaining the Government's objection. We don't need to go through that again.

09:11:32AM The one that caused us to adjourn was the amount, whether it was actually -- and I'm referring to paragraph 53. The Government maintains that the value exceeded $200,000 and therefore should be the 16. We had a lot of discussions about that that we will reference in a moment. But the reason that 09:12:06AM I adjourned sentencing was because at the time the Government raised the argument that the defense was stuck with the monetary amount determined in the forfeiture proceedings because they did not contest it. Additionally, the Government offered that the rebuttable presumption of Title 21-A 53 09:13:05AM applies. And that's really why we adjourned it to give the defense a chance to address that. It now turns out that in your submission dated August 13th, 2017, you retreat, when I say that, the Government retreats from both of those positions.

09:13:30AM The interesting issue in terms of -- there are a

couple of interesting issues. Let me first address the question of the amount for which Mr. Petix can be held accountable.

Mr. Xiang, in your latest submission you say you are trying to hit a moving target. But the last submission by the defense addressing this suggests that the defendant should be held accountable only for $116,000. You referenced paragraph 29 in Mr. Leonardo's submission of August 31st, 2017, in which he says, However, if the arm's length in-person transactions is if someone merely went to the bank to purchase a savings bond are subtracted 203,000 minus 87,000 equals 116,000, the result would be an eight-level increase. Accepting the other calculations for the purposes of the illustration, the combined adjusted offense level would be 16 not 18. Further, if the Court has adjusted for acceptance, it would go down to 14.

But I need to point this out. In that submission, paragraph 22 is stated as follows: To that end, the defendant maintains that not only was his sale of Bitcoins always for his own personal benefit but they do not fall within the purpose or spirit of 18 USC Section 1960 which requires that the money transmitting business is registered with the Department of Treasury. The defendant never transmitted funds on behalf of the public.

If that's the case, then I pose the inquiry why did

the defendant plead guilty? If all of the transactions do not fit within the money transmitting business, what are we doing here at sentencing? So we need to address that contention.

09:15:54AM Also, Mr. Xiang, in your latest submission you offer that the definition of money transmitting business by the Second Circuit in *United States versus V-e-l-a-s-t-e-g-u-i* at 199 F.3d 590 was limited to the facts of the case, although that's not what it says. The Circuit held as follows: The case involves the business of money transmitting. A money

09:16:18AM transmitting business receives money from a customer and then, for a fee paid by the customer, transmits that money to a recipient in a place that the customer designates, usually a foreign country. After the customer gives the money transmitter an amount to send to the designee, the transmitter

09:16:41AM notifies the payor, with whom it has a contractual arrangement, in the recipient country. The payor then notifies the designated recipient of the money and pays the money to the designee at the payor's office. The transmitter then remits to the payor the amount paid to the designee plus

09:17:04AM the payor's commission. You suggest in your submission, well, that is not consistent with the statute and it only relates to the facts of the case.

However, in a subsequent case, *United States versus Ali*, 561 F. supp. 269 an Eastern District case, in a footnote

09:17:37AM the Eastern District observed the Court of Appeals for the

Second Circuit has hewn flesh to the bone defined a money transmitting business for the purposes of 18 USC Section 1960 is one that receives money from a customer and then, for a fee paid by the customer, transmits that money to a recipient in a place that the customer designates, usually a foreign country. After the customer gives the money transmitter an amount to send to the designee, the transmitter notifies the payor, with whom it has a contractual arrangement, in the recipient country. The payor then notifies the designated recipient of the money and pays the money to the designee at the payor's office. The transmitter then remits to the payor the amount paid to the designee plus the payor's commission. So that's what that case observed and the Second Circuit has said the definition of a money transmitting business is.

It all may be academic because if I decline to, as I am, if I decline two points because I sustained the objection that Mr. Petix knew it was being used for unlawful activity and he gets the two points for acceptance and I accept the $116,000 figure, are we not at an offense level of 14?

MR. LEONARDO: No more than that.

MR. LEMBKE: The only thing I would --

THE COURT: Well, let's just stop and figure this out for a second because, as you point out Mr. Leonardo, he has 22 months in. Okay? So I want to know, Ms. Fish [sic],

if I set the amount at 116,000, okay, and I take out the two points for -- because I find that the Government has not established by a preponderance that Mr. Petix was aware that the Bitcoins were going to be used to purchase illegal materials, drugs, whatever, what would -- and I give him the two points for acceptance, what is the new offense level?

MS. RIDER: I think it would be 14, your Honor.

THE COURT: What is his criminal history category?

MR. XIANG: Judge, it should be 12.

MS. RIDER: Right.

MR. LEONARDO: I think it's 12.

MR. XIANG: It should be 12 if you count that way.

MS. RIDER: With the grouping, doesn't that add an additional two points to that?

THE COURT: In any event, what is his criminal history category?

MR. XIANG: It should be three.

MS. RIDER: It should be three.

THE COURT: If his criminal history category is three and he is a 14, it's 21 to 22 months. So the Court can give a time-served sentence. That's where I'm heading.

However, then we have the violation of supervised release. And let's talk about that. Okay? While the guidelines recommend that even if it's the same, even if the violation is based on the new underlying criminal conduct to

which he has pled, that the sentence run consecutive.

Now, honestly, the guidelines are discretionary, and I would be inclined not to do that. However, we run smack into the issue of the thumb drives. And we have an amended petition that he needs to be arraigned on with respect to the first violation. Ms. Hernandez has clarified where the thumb drives were, I believe. But I'm telling you this, if I find him in violation -- and I pointed this out when we pled. I pointed out when he pled that the guidelines recommend consecutive time. It's been the defense's position -- he admitted that he used the Galaxy phone. He admitted that he used the -- or had access to the computer. I think he said he didn't own it but had access. But we run smack into the thumb drives. It's been the Government's position that those thumb drives are Mr. Petix's. However, it's been Mr. Petix's position that they were not his. That they were apparently his -- I don't know if it's still your fiance but your then girlfriend. And I'm telling you this, if I find him in violation for not supplying what he is required to do -- and remember, Mr. Petix, when I sentenced you I told you this: That supervised release is a type of probation or parole. It means that after any prison sentence you serve, I will place you on supervised release for a number of years during which time you must report to a federal probation officer and abide by conditions that I set and the probation office, by my

approval, sets. One of those conditions was that you provide -- I'm not saying it was your thumb drive -- but provide the passwords. So in effect, if you didn't provide the passwords and it's determined by a preponderance of evidence that those thumb drives were yours, then I'm telling you this: You are looking at consecutive time. That's what they recommend. I understand the guidelines are advisory. I explained that I would not give you consecutive time with respect to the new charges. And I've suggested ad nauseam to no effect that perhaps there be some resolution reached because -- at least the last time we were in court, Mr. Resnick represented Mr. Xiang that there were going to be new efforts to try to get into the thumb drives since the Government believes something is on -- let's be honest -- the Government believes those are Mr. Petix's thumb drives. There's stuff on there that he does not want the Government or probation to see. And Mr. Resnick represented that there were going to be new efforts to try to get into the thumb drives.

So where do they stand, the new efforts?

MR. XIANG: Judge, since I am focused on this aspect of the case, as I understand it Mr. Resnick is physically unable to be here right now.

MS. CARDUCCI: Your Honor, I can report that the agent indicated that he was going to try to submit the thumb drives back to the lab to see if they can open them up or

crack them, if you will, and he has not provided a report with regards to that.

THE COURT: Again, I don't really care about this other than Mr. Petix could potentially have this hanging over his head. And it seems to me like what we are going to do. I'm telling you what I'm going to do is sentence him to time served. He has 22 months in. It's going to be time served, but I'm also telling you that we have to deal with the violation of supervised release. Presumably, the Government is not going to offer him the opportunity to plead to one charge on the violation of supervised release. Who is handling that?

MS. CARDUCCI: Rick Resnick, your Honor.

THE COURT: Well, you are standing in for Mr. Resnick. Is it fair to say that the Government is making no offer on the violation of supervised release?

MS. CARDUCCI: That's fair to say, your Honor, yes.

THE COURT: So that means either Mr. Petix pleads to all of the violations once we arraign him on the amended one or we put it down for a hearing. And again, it just seems like it would have been more sensible to wrap all of this up. That's what I suggested we try to do numerous times to no avail.

And I recognize, Mr. Leonardo, you are at least suggesting, if not maintaining, that the Government is acting

in bad faith because they all along suggested that any plea agreement that was reached with respect to the new charges would encompass the violation of supervised release at least as far as the Government would make a recommendation for concurrent time. But Mr. Xiang has repeatedly taken the position, as has Mr. Resnick, which I believe is the correct one, okay didn't reach a plea agreement so the Government is not bound to indicate that they're recommending that any sentence run concurrent.

09:26:24AM

09:26:42AM In any event, I don't care what they are recommending unless the Government says we are going to be satisfied by clearing up this violation of supervised release by having him plead to one of the violations, new criminal conduct. And as I'm trying to make clear, while the guidelines recommend a consecutive sentence, they're discretionary. And in the past, I would be inclined not to run it consecutively because it's the new conduct that he is already been punished for.

09:27:03AM

On the other hand, at the risk of repeating myself, we have violation number one. And if the Government, as Ms. Carducci is representing, is not inclined to throw that one in if he pleads to the new crime, then presumably we are going to put this down for a hearing because I am candidly telling you that if he is found in violation of that one, then I believe it's appropriate to follow the recommendation of the

09:27:25AM

09:27:43AM

guidelines and run the sentence consecutively unless some accord can be reached between the Government and the defendant. And again, I don't know what's on these thumb drives, but the Government has offered, and correct me if I'm wrong, that initially -- did Mr. Petix's girlfriend indicate that the thumb drives were his?

MR. XIANG: Yes, your Honor.

THE COURT: Okay. Is that -- probation was out there what --

MS. RIDER: Your Honor, I remember her saying that the laptop and the smart phone was his. I don't remember us asking specifically about the thumb drives.

MR. XIANG: Your Honor, we have the thumb drives as one. One of them was connected to the laptop he was using to transmit the Bitcoins with the undercover agent. And the other five were in the backpack that were with him. He put all of the devices on her, and she said no they are his.

THE COURT: So in any event, then she may have retracted that. I am not sure. But in any event, we are looking at a hearing because I'm being as forthright as I can, Mr. Petix. So we can do one of two things. We can try to wrap this all up or I am going to proceed with sentencing, sentence him to time served on this charge and then set the other one down for a hearing unless he wants to plead to everything.

MR. LEMBKE: Let us just talk to him for a second.
But in my view, I'm telling you right now what I'm going to recommend. I'm going to recommend that he admit to the violation. Okay? Because there are clearly violations there. Whether or not you find him guilty of violating the condition of not providing the passcode or obtaining or getting on a computer or whatever the kids --
THE COURT: No, you are missing my point. And again, it would be easy for me to hold back and not tell you anything.
MR. LEMBKE: I understand.
THE COURT: But I'm telling you that as far as one of the violations, new criminal conduct, if you go to the guideline book --
MR. LEMBKE: Yeah.
THE COURT: -- it recommends that whatever the violation is that run consecutive.
MR. LEMBKE: Yes.
THE COURT: But we know the guidelines are advisory.
MR. LEMBKE: Yes.
THE COURT: And I am telling you that if all he pled guilty to was new criminal conduct to which he has already plead guilty and been sentenced on, apart from what the guidelines recommend, I would run it concurrent.

MR. LEMBKE: Okay.

THE COURT: But I'm also telling you this, if he is found in violation because those thumb drives are his and he refused to comply with the requirements that I set up, then I'm going to sentence him consecutively.

09:30:35AM

MR. LEMBKE: Right. I understand that.

THE COURT: So if knowing -- again, I'm trying to tell you up front so you know where I am coming from.

MR. LEMBKE: Yes.

09:30:44AM

THE COURT: If he wants to plead to that, that's fine.

MR. LEMBKE: Well, I mean, typically, if they are not going no agree, for example, to allow him to plead to the new conduct which -- right, you said you are not; is that right?

09:30:56AM

MR. XIANG: Right.

MR. LEMBKE: I don't know. For example, I don't know the answer to this question and that is if we are going to plead guilty without an agreement and you plead guilty to the indictment, right, or to the charging document --

09:31:09AM

THE COURT: Right.

MR. XIANG: Possession.

MR. LEMBKE: In this case, I don't know if it applies to supervised release violations whether we can say, Judge, we are prepared to plead guilty to --

09:31:21AM

THE COURT: You can. You can certainly plead to whatever you want. The thing is, again, I don't know what your position is. Remember, all along the representation from Mr. Petix has been that those thumb drives were not his. Accordingly, this is not a case where, Okay, the thumb drives are mine and I'm not giving you the passwords. His position was that the thumb drives aren't his and he didn't know the passwords. So that's what you need to decide. It sounds like -- here is what we are going to do. I am going to sentence him on the charges. As soon as we get by this hurdle, okay -- and that's in the submission from August 31st where he says he didn't -- it applies to what he plead to -- we went through this whole -- this whole exchange at the plea. And I don't know if both sides have the plea minutes but I do where I look for some clarification from both sides.

MR. LEMBKE: Yes.

THE COURT: Okay. And ultimately, and I will read to you where we got to.

Bear with me one moment, please.

MR. LEMBKE: Okay.

THE COURT: Here is what the key question was after you went back and forth for a long time, and I kept asking is that sufficient. Is that not sufficient? The Court: Mr. Petix, do you admit to what Mr. Lembke said that you engaged in more than one transaction that involved a money

transmitting business and at least one of those transactions impacted interstate commerce. Do you agree to that? The Defendant: I agree to that, but what he said about the $90,000 in transactions that were arm's length transactions, I don't. Mr. Lembke: That is all in dispute. All right. I'm just asking, Mr. Xiang, what Mr. Petix admitted to sufficient from the Government's point of view in their research? Mr. Xiang: Ask the question again. What was the question? The Court: I said what Mr. Petix just admitted to was that to what you suggested more than one, one of which effected interstate commerce. Is that sufficient? More than one? Mr. Xiang: More than one. It was regular business, yes. That's enough.

So that's based on everyone's agreement that it was sufficient. But as I pointed out -- bear with me a minute while I find it.

Paragraph 22 of the August 31st, 2017, submission to that end the defendant maintains that not only was his sale of Bitcoins always for his own personal benefit, but they do not fall within the purpose or spirit of 18 USC 1960 entitled 31 Section 5330 which requires that money transmitting businesses register with the Department of Treasury. The defendant never transmitted funds on behalf of the public. So I don't know what that means.

One other observation, as Mr. Xiang points out, the

defendant is charged under the section of the statute saying he didn't comply with federal requirements not state requirements. The state requirements -- it be can one of either. You know? Either you don't comply with the state registration requirements which are sometimes more strict or don't comply with the federal ones. He is charged with not complying with federal ones. So all of this stuff about what the state says is not relevant.

09:35:24AM But I'm concerned, obviously, about that statement. That, to me, says I didn't engage in a money transmitting business. We flush this out. Right or wrong, I am bound by the Second Circuit. And I'm satisfied that the Second Circuit has defined what a money transmitting business is. Why they didn't look more closely at the statute, I don't know. But I 09:35:46AM am stuck with their definition. So I'm concerned that now he is representing that he did not engage in a money transmitting business.

Let me talk to you, Mr. Petix. Here is what I'm saying. I am bound by the Second Circuit. The Second Circuit 09:36:08AM is the court above me. Okay? And they define money transmitting business, and if I can use the example they give, all right. So I come to Mr. Lembke. I want to send money to France -- to relatives in France. I don't know how to do it. So I go to Mr. Lembke and I say, listen, I want to get $2,000 09:36:36AM to my cousin Giuseppe in France. And Mr. Lembke says, I can

take care of that for a fee. So Mr. Lembke says I'm going to use Western Union. I'm going to use them to get the money. I'm going to get them. They are going to transmit the money to their offices in France. And then Western Union is going to contact Giuseppe, and he is going to come and pick up the funds. Now, Mr. Lembke is not going to do it for free because that's how he makes his money from Western Union. So everybody gets a little commission. That's how the Second Circuit has defined money transmitting business.

09:36:56AM

And by the way, that's consistent with -- and I think I cited this -- the Fourth Circuit *United States versus Talebnejad,* whatever, at 460 F.3d 563, which says a money transmitting business is one, that for a fee, accepts currency for transfer within or outside of the United States through foreign currency exchanges and financial institutions. Many of these businesses are operated informerly by immigrants to fellow immigrants from their home. In 1992, Congress sought to combat the growing use of money transmitting businesses to transfer large sums of money, monetary proceeds of unlawful enterprises, by enacting §1960, and it cites the Second Circuit case. So we need to clear this up.

09:37:22AM 09:37:43AM 09:38:05AM

The last thing I want is to get this case back on some kind of -- now, I don't know that we would because I'm not sentencing him. But I don't want to get an ineffective assistance of counsel argument because what's in that

09:38:30AM

August 31st submission is at odds with his plea of guilty.

MR. LEONARDO: I understand, Judge. Mr. Petix, at least until this morning, stood by his plea. My argument went to the inability of the Government to demonstrate that any particular transaction should be counted as part of the value of the funds calculation.

09:39:04AM

THE COURT: We can clear that up. It doesn't say that. It says always. You used the word always.

MR. LEONARDO: I'm telling you what I intended when I wrote those several paragraphs.

09:39:22AM

THE COURT: Mr. Petix, here is the issue. Okay? You follow the Second Circuit's definition of money transmitting business --

THE DEFENDANT: Yes, your Honor.

09:39:32AM

THE COURT: -- that means you are getting some fee. It means that to be in a money transmitting business, at least by the Second Circuit's definition, right or wrong, is you get a fee for doing what you do.

So somebody comes to you and says -- and again, I don't know how this works. I assume there is only a finite number of Bitcoins. You have Bitcoins. Somebody needs them because they want to buy something on the dark web or however. They want to buy something. So somehow, for a fee, you are able to arrange for this transfer of Bitcoins to them. According to what you said in your plea agreement, you

09:39:49AM

09:40:12AM

admitted to doing that on more than one occasion to operating a money transmitting business. Mr. Xiang was comfortable at the time as long as it was more than one that suffices. Mr. Lembke specifically said we are reserving our right to challenge. I took it as challenging the amount. But you understand why I'm concerned about the statement in the August 31st submission because it says you didn't ever run a money transmitting business.

MR. LEMBKE: Don't answer.

THE COURT: Talk to Mr. Lembke and Mr. Leonardo.

Mr. Lembke?

MR. LEMBKE: Yes, your Honor. We waive -- I had a chance to discuss this with Mr. Petix. And what he has relayed to me is that he, in reviewing Mr. Leonardo's submission, didn't catch, you know, the impact of paragraph 22 and that he stands by the admissions that he made during his plea colloquy with the Court concerning the factual basis. And so in that regard, to the extent that paragraph 22 is in conflict with what he said at the plea, that what he said at the plea trumps that and that paragraph 22 is inaccurate.

THE COURT: All right. Let me just ask you, Mr. Petix, I know you have been here. And I repeated what I believe is the direction from the Second Circuit on what a money transmitting business is. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And what Mr. Lembke is referencing is that in your plea minutes I asked you if you agreed that on more than one occasion you operated an unlicensed money transmitting business and that at least on one of those occasions it impacted interstate commerce. Do you recall that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you reaffirm what you told me then?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Counsel, then we can proceed to sentencing on the indictment to which Mr. Petix pled.

Does the Government move sentence, Mr. Xiang?

MR. XIANG: Yes, your Honor.

THE COURT: Is there anything you want to say?

MR. XIANG: No.

THE COURT: Mr. Lembke, is there anything you would like so say on behalf of Mr. Petix before the Court passes sentence?

MR. LEMBKE: Not in terms of, you know, what we -- in terms of what we have submitted in connection with the papers in the sentencing memorandum, but if your Honor does not, which you have indicated, you are not going to do the two point enhancement for acknowledgment that the funds were going to be used for illegal purposes. And if you find, I think you

said, 116,000 to be the value of the funds, my understanding is that that would result in a level 12 after taking into consideration acceptance and responsibility. And then when dealing with the grouping provision, because of the two counts, the false statement and the money transmitting count, his guideline range would be 18 to 24 months.

09:46:02AM

THE COURT: You are 100 percent correct. Okay. Anything, Mr. Petix, you want to say to me before I pass sentence?

09:46:23AM

THE DEFENDANT: No, your Honor.

THE COURT: The Court is then prepared to pass sentence on you. In that regard, I have received the revised presentence investigation report and other submissions to which we have referred ad nauseam including the, what I have referred as, character letters from your family and your girlfriend.

09:46:40AM

I have listened to what everyone said here. We have adjourned this a number of times. We tried to make sure that what happens is accurate and consistent with the law.

09:46:56AM

You stand before me, Mr. Petix. You are now 36 years old.

THE DEFENDANT: I'm 32 years old.

THE COURT: How much?

THE DEFENDANT: Thirty-two.

09:47:07AM

THE COURT: Thirty-two. You have the wrong -- I

have your birth date down -- there must be an error. What's your birthday?

THE DEFENDANT: 1/13/1985.

THE COURT: Let me just check your presentence report. Yep, I have the wrong birth date down. You are -- what did you say, 32?

THE DEFENDANT: Yes, your Honor.

THE COURT: So you are 32 years old, and you are here for sentencing after pleading guilty to the subject indictment, both counts, count one making a false statement a Class D felony in violation of Title 18 of the United States Code Section 1001(a)(1). As we discussed when you pled guilty, this is punishable by not more than five years in prison, a $250 fine, or both. And then Count two, which has been the more problematic count, operating an unlicensed money transmitting business another Class E felony. This is in violation of 18 USC Section 1960, again, punishable by not more than five years in prison, a quarter of a million dollar fine, or both.

On August 26th, 2017, you appeared before me and pled guilty to this charge without a plea agreement. Essentially, you plead to the indictment.

This offense represents your second adult conviction. We have referenced on numerous occasions the July 24, 2006, conviction by plea to knowingly transporting

child pornography and interstate commerce to which you received a sentence of 60 months, 30 years of supervised release.

On July 11th, 2012, you were released by probation, and then the violation was filed on December 4th, 2015.

09:49:08AM

As we discussed when you pled guilty, Mr. Petix, sentencing in this action is pursuant to the Sentencing Reform Act of 1984. Mr. Lembke and Mr. Leonardo have indicated that they received a copy of the revised presentence investigation report and reviewed it with you. You told me you read the report yourself and discussed it with them. I have either indicated that objections filed by Mr. Lembke did not need a ruling because they are in no way going to effect your impact sentencing or, with respect to the amount and the increase because of knowledge that the transfer funds were going to be used to further criminal activity, I have sustained their objection, that is, I have found the Government has proved by a preponderance of evidence. The Court, otherwise, does adopt the statements contained in the presentence investigation report as its findings of fact.

09:49:28AM

09:49:50AM

09:50:07AM

In deciding on a reasonable and appropriate sentence, the Court is aware of its responsibility to impose a sentence sufficient, but not greater than necessary, to comply with the objectives of sentence as set forth in 18 USC Section 3553. As required by that section, I have considered all of

09:50:25AM

09:50:41AM 09:51:02AM 09:51:14AM 09:51:30AM 09:52:04AM

the following: I have considered the nature and circumstances of your offenses and your history and characteristics. I have considered the need for the sentence imposed to reflect the seriousness of what you did, to promote respect for the law, to provide you with a just punishment, to afford an adequate deterrence to criminal conduct, to make sure you don't commit further crimes, to provide you with whatever care, treatment, or training you need in the most effective manner. I have considered the importance of avoiding unwarranted sentencing disparities. That is the differences among defendants with similar records who have been found guilty of similar conduct. And of course, I have considered the sentences available, both of those allowed under the statute and those recommended under the guidelines.

With respect to the advisory sentencing guidelines in accordance with the Second Circuit's direction in the Crosby and Gonzalez cases, I have made the following finding which allowed me to properly consider the advisory sentencing guidelines along with all of the sentencing factors.

With respect to count one making false statement, I found that your base offense level is six. With respect to operating an unlicensed money transmitting business, the starting point would be a six plus an increase reflecting the amount with respect to the transactions involved. I'm accepting the arguments that it's 116,000. That would result

in an eight level increase which would take you to a base offense level of 14. I am declining, as I said, to enhance because you believe the funds or the proceeds of unlawful activity. I find that enhancement was challenged by your lawyers and the Government has not established that by a preponderance of evidence. That means it's a 14. Because the offenses are grouped, it results in a one-level increase to 15. However, I do find, based on all of the information the lawyers have brought to me and based on the recommendation of the presentence report, that you are entitled to a two-level reduction for acceptance. That takes you down to a 13. Your criminal history category is three. So with an offense level of 13 and the criminal history category of three, the recommended imprisonment range under the advisory sentencing guidelines would be, as Mr. Lembke pointed out, 18 to 24 months. Supervised release on both counts is one to three years. Probation is not recommended.

Ms. Rider, does the -- I got it right that time. Ms. Rider, does the recommended fine range change?

MS. RIDER: Yes, your Honor. The recommended fine range would be, for a 13, $5,500 to $55,000.

THE COURT: Okay. So it's $5,500 to $55,000. Restitution is not an issue. So those are my options under the guidelines.

The Court, on deciding an appropriate sentence,

09:54:15AM 09:54:39AM 09:54:56AM 09:55:10AM 09:55:31AM

Mr. Petix, has carefully considered all of the facts and circumstances surrounding your conviction as well as the objectives of sentencing set forth in 18 USC Section 3553.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that you, Richard Petix, are hereby sentenced to time served, approximately 22 months, on count one and time served on count two. Those two sentences are to be served concurrently.

You are placed on supervised release for three years on count one and three years on count two to be served concurrently for a total term of three years. You are to report to the probation office in this district when you are done.

While on supervised release, you are not to commit another federal, state, or local crime. You are prohibited to possessing a firearm, ammunition, or any other dangerous device. In addition, you shall not possess a controlled substance, and you shall comply with the standard conditions adopted by this Court.

And you shall comply with the following special conditions. Since the incident offense occurred after September 13th, 1994, drug testing is required by the 1994 Crime Control Act. Additionally, you shall cooperate with the collection of a DNA sample as required by the Justice For All Act of 2004. Moreover, you shall participate in a computer

internet monitoring program administered by the probation office. You must provide the probation office with advance notification of any computer, automated services, or connective devices that you will be using during the term of supervision. The probation office is authorized to install any applications necessary to surveil any activity on any computers or connected devices which you own or operate. You may be required to pay the cost of monitoring services for the monthly rate provided by the probation office. The rate and payment schedule are subject to periodic adjustment by the probation office. The US Probation Office shall be notified via electronic transmission of any impermissible or suspicious activity or communications occurring on such computer or connected devices consistent with the computer monitoring policy in effect by the probation office. It is triggered by any impermissible or suspicious activity.

You shall consent to and cooperate with unannounced examinations of any computer equipment which you own or use. This examination shall include, but is not limited to, the retrieval and copying of all data from any computers, connective devices, storage media, and any internal or external peripherals, and may involve removal of such equipment for the purpose of conducting a more thorough inspection. Any such monitoring examination shall be designed to avoid, as much as possible, any review of privileged

material or any private materials that is not illegal, or reasonably likely to lead to illegal material, or evidence related to illegal activity. This consent that is triggered by impermissible or suspicious activity shall include providing any passwords.

09:57:26AM

You shall not have deliberate contact with any child under 18 years of age, excluding your own biological or adopted children, unless approved by the probation office. You shall not loiter within 100 feet of schools, playgrounds, arcades, or other places primarily used by children under the age of 18. The probation office has the discretion to authorize you to pick up, to the extent that you do have children, from school or other functions. However, authorization must be obtained in advance.

09:57:42AM

You are prohibited from downloading or possessing any child pornography as defined in 18 USC Section 2256 as follows: Any visual depiction including any photograph, film, video picture, or computer, computer generated image, or picture whether made and produced by electronic, mechanical, or other means of sexually explicit conduct for the purpose of this special condition of sexually explicit conduct must actually stimulate.

09:57:59AM

09:58:16AM

In order to monitor your compliance with not buying or subscribing to online services that provide child pornography, you shall provide the United States Probation

09:58:31AM

Office with access to any requested personal and/or business financial information.

I am sure this happened, but you shall register with the state sex offender registration agency in any state where you reside, are employed, carry on a vocation, or are a student and shall provide proof of registration to the probation office. The probation office is authorized to release your presentence investigation report to the New York State Board of Examiners for Sex Offenders.

The Court may order, as an explicit condition of supervised release for a person who is a felon and required to register under the Sex Offender Registration Notification Act, that a person submit his person, property, house, residency, personal papers, or other electronic communication, or data storage devices, or media, and effects to search at any time with or without a warrant by any law enforcement or probation officer with reasonable suspicion concerning the violation of conditions of supervised release or unlawful conduct on your part by any probation officer in an unlawful discharge -- in the lawful discharge of the officers of supervisory functions.

We need to -- bear with me a second. What was the sentencing we just had on with Ms. Burger?

THE CLERK: Was it yesterday?

THE COURT: No, the one last week.

MS. RIDER: Woodbury, is that the one you are

looking for with the polygraph condition?

THE COURT: Yes. With respect to the polygraph condition, here is the language. To the extent that you are not engaged in a treatment program for sex offenders that includes polygraph testing, you must submit to periodic polygraph testing not to exceed two times in a calendar year and, if needed, two retests. The scope of such examination shall be limited to information necessary for supervision, case monitoring, and treatment. You shall answer the questions posed during the polygraph examination and polygraph pretest examination subject to your right to challenge in a court of law the use of such statements in violation of your fifth amendment rights. In this regard, you shall be deemed to not have waived your fifth amendment rights. The results of any polygraph pretests and polygraph examinations shall be disclosed to the United States Probation Offices and the Court but shall not be further disclosed without a court order. That is from *United States versus Johnson* at 446 fed.3d 272. You may want to make sure that language is incorporated in future recommendations.

While on supervised release, you shall provide the probation office with access to any requested personal and business financial information which the probation office is authorized to release to the United States Attorney's Office for the collection. Now, I'm not going to impose that

condition because the Court -- I find that you don't have the ability to pay a fine. So the fine is waived in this case, but you have to pay the special assessment. It is further ordered that you pay a special assessment of $200, $100 on each of the counts, which is due immediately.

10:04:03AM

Can you pay that?

THE DEFENDANT: Yes, I'm okay with that.

THE COURT: All right. I'm directing forfeiture of your interest in the following property: One Samsung Galaxy SV Model MSS902L a cellular telephone bearing IME Number 990005823326880, one ASUS laptop computer model GS52B bearing the serial number FAN0CY922117804A, and six assorted thumb drives seized on December 3rd, 2015.

10:04:31AM

With respect to the sentence I impose as far as the time served and which amounts to 22 months and the term of supervised release, the Court finds that the sentence is the sentence sufficient but not greater than necessary to comply with the objectives of sentencing as set forth in 18 USC Section 3553 that I went through.

10:05:14AM

Now, listen, pursuant to Rule 32J of the Federal Rules of Criminal Procedure, I am advising you of your right to appeal the sentence imposed if you pled to the indictment. I know you've retained Mr. Lembke and Mr. Leonardo. However, I do want to inform you that if you are unable to pay the cost of an appeal and nonetheless do want to appeal, you may apply

10:05:36AM

10:05:58AM

for leave to appeal as a poor person. It's called form of pauperis. What would happen -- again, I don't know why you'd want to appeal this because I'm giving you time served. If you did want to appeal it, what would happen is Mr. Lembke and/or Mr. Leonardo would file a notice of appeal. If you want them to handle the appeal, you would have to make financial arrangements with them. If you couldn't, then you could apply to the Second Circuit to appoint you a lawyer to do the appeal.

10:06:33AM Does that all make sense to you?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. That's the sentence of the Court. I don't think anything needs to be -- there is no compliance so we are good. So now, what are we going to --

10:06:46AM MR. XIANG: Judge, there was an original underlying complaint for the 1001 --

THE COURT: That was obligated by the indictment so we don't need to dismiss anything. That would only be on the waiver. This was not the waiver, correct, this was the indictment?

MR. LEMBKE: That's right.

THE COURT: What do you want to do on the violation of supervised release?

MR. LEMBKE: I'm not entirely sure if I understood our earlier discussion.

10:07:32AM
10:07:50AM
10:08:32AM
10:09:10AM

THE COURT: Here is where we stand. Ms. Carducci has represented -- she and Mr. Resnick are apparently handling the violation of supervised release. And in a minute, I will arraign him on the amended one because this clarifies where the thumb drives were found. And let's talk about the violation of supervised release.

Here is what we have on the violation of supervised release. We have what was captioned petition or summons. The first one that was filed on -- dated December 4th, 2015. We have an amended and updated petition dated January 11th, 2016. We have an amended petition dated March 23rd, 2016. And now we have a second amended petition dated October 24th, 2017.

Now, what I need to do, Mr. Petix, is arraign you on the amended petition. The only thing that's changed is the first violation. So I will just read that. The first violation says, The defendant must provide the United States Probation Office with access -- excuse me -- advance notification of any computers, automated devices, or connective devices that will be used during the term of supervision. US Probation Office is authorized to install any applications necessary to surveil all activity on computers or connected devices owned or operated by the defendant. The US Probation Office shall be notified via electronic transmission of impermissible suspicious activity or communications occurring on such computer or connected device consistent with

the computer monitoring policy in effect by the probation office. As triggered by impermissible suspicious activity, the defendant shall consent to and cooperate with unannounced examinations of any computer equipment owned or used by the defendant. This examination shall include, but is not limited to, retrieval and copying of all data from the computers, connective devices, storage, media, and any internal or external peripherals and may involve removal of such equipment for the purpose of conducting a more thorough inspection.

10:09:24AM

Details: On September 3rd, 2015, the US Probation Office observed Petix accessing a laptop with an external thumb drive and in possession of a smartphone capable of connecting to the internet.

10:09:43AM

Now, here is the change, this language: In addition, five thumb drives were found inside a bookbag which was located in the seat next to the offender in Tim Hortons.

10:10:00AM

All of these devices were seized by the probation office. The defendant refused to cooperate and failed to provide passwords for these devices so we can conduct an examination of the devices. The offender failed to provide this officer with notification that he had access to a laptop computer, smartphone, and thumb drives. In addition, on October 20th, 2015, the offender completed a computer internet data form which instructed him to list all internet connected services that he had access to. In this form, the offender

10:10:16AM

10:10:37AM

noted, "I don't use computers."

So the only change, am I correct Ms. Hernandez, is in addition, the language: In addition five thumb drives were found inside a bookbag which was located in the seat next to the offender in Tim Hortons; is that correct?

MS. HERNANDEZ: Correct, your Honor. Yes.

THE COURT: Mr. Lembke, have you been provided a copy of the second amended petition?

MR. LEMBKE: Yes, sir.

THE COURT: Do you waive a full reading?

MR. LEMBKE: I do, your Honor.

THE COURT: And how does Mr. Petix plea?

MR. LEMBKE: Initially, he will deny the allegations.

THE COURT: Okay. And just to be clear as to what I said, there are a number of violations. The second one says the defendant shall not commit another federal, state, or local crime. The third says the defendant shall answer truthfully all inquires from the probation officer and follow the instructions of the probation officer. The third says the defendant shall not commit another federal, state, or local crime. Okay. What I am saying is this: Essentially, he pled to the underlying conduct in the new indictment regarding the allegation that he not commit another crime. He also pled guilty to the underlying conduct in the new indictment dealing

with answering the questions from the probation officer truthfully. So what I am saying is, even though, if you look at the guidelines and specifically if you look at guideline Section 7B1.3F which says that any term of imprisonment imposed upon the revocation of supervised release shall be ordered to be served consecutively to any sentence of imprisonment the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of supervised release.

10:12:21AM

10:12:34AM

I am saying the guidelines are advisory. I would not be inclined, despite what the guidelines say, to sentence him consecutively for the conduct to which he has plead in the new indictment. That is the new crimes or not answering the questions truthfully.

10:12:52AM

However, I am telling you that if he is found in violation of other conduct, and it's all in the same town essentially not providing the thumb drives, then -- the passwords to the thumb drives, then I would be inclined to sentence him consecutively. I'm not saying that definitively. I am certainly not -- I certainly would be receptive to arguments, but I'm just trying to be candid with Mr. Petix and counsel upfront because I don't consider that was covered by the indictment and that is my order. My order was that he cooperate, if appropriate, with any searches which would

10:13:20AM

10:13:41AM

include giving passwords.

So the real issue that I see is this: If he admits to violation one, he is going to admit those thumb drives were his and he didn't give probation the passwords. But that's not consistent with what he said at least not -- I shouldn't say what Mr. Petix said but what has been represented all along that the thumb drives weren't his. So he couldn't -- so he can't be held accountable for not giving passwords since the thumb drives were not his. So that's where we stand.

So we can do one of two things. I can set it down for a hearing. I can adjourn it for a little while to give you a change to consult with Mr. Petix to decide whether you want a hearing or whether you want to plea. But what the Government is representing is they are not accepting -- I mean, they are not coming in here and saying, Judge, we are recommending that if he pleads to one count or one of the allegations that we take that in satisfaction of all.

MR. LEMBKE: May I have a moment, Judge?

THE COURT: Yes.

MR. LEMBKE: Thank you.

(There is a pause in the proceeding.)

MR. LEMBKE: All right. Picking up on your Honor's theme of being forthcoming and, you know, letting you know where we stand here, as I read the violation number one Mr. Petix could admit to conduct set forth in that violation

without implicating the thumb drives.

THE COURT: You know what, Mr. Lembke, again, I appreciate that candor, but then Ms. Hernandez can file a third amended petition setting forth the separate counts and separate allegations. Let's be honest, I'm telling you where I am coming from. This is about -- if they are not his thumb drives, then he shouldn't be punished any further if they are not his thumb drives. If they are, then he is going to get punished further. That's as clear as I can take it. So for me the issue is -- and I'm telling you why because I issued an order. I said you have to cooperate with these searches. Do I know if they are his thumb drives or not? No. But if he pleads -- if he wants to plead to everything, he can. But he is going to admit to the allegations contained in the violation, or I am not going to accept it and we will put it down for a hearing.

MR. LEMBKE: Well, here's -- let me tell you what has been running through my mind. And that is this, that I don't think that violation number one has any impact on what his -- for instance, his recommended guideline range would be for 10 months. It's still a grade B or level B violation.

THE COURT: No, right. It's 4 to 10. And I am inclined -- what is the statutory maximum?

MS. HERNANDEZ: Three years, your Honor.

THE COURT: I'm not suggesting that it changes

anything.

MR. LEMBKE: Right.

THE COURT: Anything is a B violation.

MS. HERNANDEZ: Yes.

10:19:05AM THE COURT: Whether you plead to one B violation or more than one, it doesn't matter. But the gravity to me is you cannot play games with the court.

MR. LEMBKE: No, and I don't want to play -- I don't to play games, but that's why I brought this --

10:19:20AM THE COURT: No, and I'm not suggesting you are playing games. I meant to say that when I order somebody to comply with certain conditions of supervised release, I expect them to comply. And I am not saying he didn't. I don't know if he did. I don't know. I mean, all I have been hearing all along is from the Government that the thumb drives were his, from the defense that they are not his.

MR. LEMBKE: I think I ought to raise this now.

THE COURT: Okay.

MR. LEMBKE: As I was starting to say, what's been racing through my mind here is this, that the sentence of time served which comes out to be realtime of 22 months, there are a couple of things to take into consideration and that is this: That if Mr. Petix were sentenced to 22 months and he was still incarcerated, he would be entitled to a reduction of the sentence which would actually be real time in the amount

of about 18 and a half months. A sentence of real time 22 months is roughly the equivalent of a sentence of 26 months which is higher than the guideline range which was 18 to 24. And the reason I'm saying this is because I don't want to be cute about this. And I don't want -- if this is something that you just wouldn't consider in your sentence, then --

10:21:14AM

THE COURT: I am not going to consider it. I am telling you this, that we have -- and you are right. We had this long discussion. Can you make him -- if they were, I'm not saying they are yours, but if the thumb drives were his, can you make him give up the passwords? And we discussed --

10:21:29AM

MR. LEMBKE: Yes.

THE COURT: You know, you probably can't because you have a fifth amendment right not to incriminate yourself whether it's physical evidence you can give up. We can debate that all, but I tend to be persuaded by your record. But it still doesn't -- it's still a violation of supervised release.

10:21:45AM

MR. LEMBKE: Yes, I mean, it's just like any other time you invoke your fifth amendment right.

THE COURT: Right.

MR. LEMBKE: You can invoke your fifth amendment right in a lot of circumstances, but sometimes there are consequences for it.

THE COURT: Yes, it depends. And I am not sure of that because we know there are situations where, okay, I can

10:22:07AM

take your blood. That's not your fifth amendment right because it's not testimony. So what this is, I am not sure. But I think you made a good argument on that point that you can't make somebody -- but this is a different. This is a violation of supervised release. And I come back to me as a court. I expect people to do what I order them to do. And if those were Mr. Petix's thumb drives and he didn't provide probation with the passwords, then that's a violation of my court order. And it has not been taken into account by his plea.

10:22:23AM

10:22:50AM

Let me suggest this, maybe you guys want to talk about it a little.

MR. LEMBKE: Yes.

THE COURT: I am going to put it down for a hearing. But if you decide you don't the want a hearing, let -- I guess it's going to be Ms. Carducci; right? You are bailing on this one; correct?

10:22:57AM

MR. XIANG: I might be back, Judge. But yes, the lead counsel will be Mr. Resnick. I think he's medically unavailable right now, but he should be back within 30 days or so. If your Honor can set it for that time, I can brief him.

10:23:14AM

THE COURT: Is he all right?

MR. XIANG: I think they said he fell and broke a couple of bones.

THE COURT: I hope he wasn't playing basketball. I

10:23:29AM

think he's getting too old for that now.

MR. LEMBKE: I wouldn't take him on if he tried to get me to play a game.

THE COURT: Let's put it down for -- let's put it down for two weeks. If he's not back, somebody else can step in and pick it up. It's not that complicated.

Kathy, what do we have in two weeks?

THE CLERK: It's a Wednesday. I have to find a courtroom. We don't have anything scheduled.

10:24:07AM THE COURT: All right. Wednesday, what day?

THE CLERK: The 15th.

THE COURT: All right. Let's put down for the 15th. What I would ask you to do -- that's a Wednesday -- by Monday the 13th, if you can kindly, Mr. Lembke and Mr. Leonardo, notify the Government, Mr. Xiang can relay to you who will be handling it, I guess it's Ms. Carducci, if you don't want to go to a hearing. Otherwise, both sides be ready to go to a hearing on that date. We will set it down for 9:00 to 12:00.

10:24:40AM MR. LEMBKE: Did you say 9:00 a.m. to 12:00 p.m.?

THE COURT: I think that should be enough.

MR. LEMBKE: Yes.

THE COURT: Okay.

MR. LEMBKE: If it's not, I'm leaving so you can finish it without me.

THE COURT: Mr. Petix, again, before you go today just meet with probation. Obviously, you are still on supervised release. The conditions are essentially the same. I take it he still needs to meet with probation on the new one.

10:25:03AM

MS. HERNANDEZ: Yes, your Honor.

THE COURT: So before you go, just stop in.

Ms. Hernandez, do you want him to see you; right?

MS. HERNANDEZ: He will be seeing Mr. Smith.

10:25:14AM

THE COURT: Is Mr. Smith taking over?

MS. HERNANDEZ: Yes, he is.

THE COURT: Have you met with Mr. Smith before?

MS. HERNANDEZ: Yes, your Honor.

THE COURT: Good. He is a good man as -- I can't say Ms. Hernandez is a good man, but they are both good probation officers. Okay. Thank you very much.

10:25:20AM

MR. LEONARDO: Thank you, Judge.

(The proceeding concludes at 10:25 a.m.)

* * *

REPORTER CERTIFICATE

I, Briana L. Jeffords, do hereby certify that I did report in stenotype machine shorthand the proceedings held in the above-entitled matter.

*Briana L. Jeffords*
BRIANA L. JEFFORDS
Freelance Court Reporter and
Notary Public No. 01JE6325111
in and for Genesee County, New York